McNUTT LAW GROUP LLP
SCOTT H. McNUTT (CSBN 104696)
MICHAEL C. ABEL (CSBN 187743)
SHANE J. MOSES (CSBN 250533)
219 9th Street
San Francisco, California 94103
Telephone: (415) 995-8475
Facsimile: (415) 995-8487

Proposed Attorneys for DEBTORS

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| In re<br><br>METAWISE GROUP, INC.,<br>DRACO RESOURCES, INC.,<br><br>Debtors.<br><br>☐ Affects **METAWISE**<br>☐ Affects **DRACO**<br>☒ Affects **BOTH DEBTORS** | Case Nos. 14-31652-DM<br>14-31654-DM<br><br>Chapter 11<br><br>**MOTION FOR ORDER AUTHORIZING DEBTOR TO (1) PAY PRE-PETITION EMPLOYEE WAGES; AND (2) HONOR VACATION AND SICK LEAVE OBLIGATIONS**<br><br>Date: December 15, 2014<br>Time: 1:30 p.m.<br>Place: 235 Pine Street<br>Courtroom 22<br>San Francisco, CA 94104<br>Judge: Hon. Dennis Montali |

## I. INTRODUCTION

Metawise Group, Inc. ("Metawise") and Draco Resources, Inc. ("Draco", and together with Metawise, the "Debtors"), the joint Debtors and debtors-in-possession in the above captioned Chapter 11 reorganization cases hereby jointly move for an order authorizing the Debtor to pay wages accrued pre-petition and authorizing the Debtor to honor pre-petition employee vacation and sick leave benefits (the "Payroll Motion").

The Payroll Motion is based on the Memorandum of Points and Authorities set forth herein, the DECLARATION OF SONGQIANG CHEN IN SUPPORT OF INITIAL MOTIONS (the "Chen Declaration"), filed concurrently herewith and incorporated herein by this reference, the pleadings and papers on file herein, and upon such oral and documentary evidence as may be presented at the hearing on the Payroll Motion. By a separate application, Debtors have requested an order shortening time for notice and setting a hearing on this matter on an expedited basis.

## II. JURISDICTION

On November 12, 2014 (the "Petition Date"), the Debtors filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of California.

The Court has jurisdiction over this case and this Payroll Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409(a).

The statutory predicate for the relief requested herein is 11 U.S.C. §§ 105(a), 363(b) and 507(a).

## III. FACTS

### A. Background of the Debtors

Metawise is a California corporation duly organized under the laws of the state and was incorporated on or about February 25, 1997. Draco is a wholly owned subsidiary of Metawise, formed in 2013. Metawise is an international trading company specializing in the procurement and supply of key raw materials for the global steel industry and recycled material such as plastic, paper, and scrap metal. Metawise has customers all over the globe, with many important and close relationships with high profile companies in the Chinese steel industry. Over the years, the company shipped hundreds of thousands of tons of chrome, manganese, and iron ores to China.

In early 2010, Metawise entered into a purchase and sale agreement with Greenfield Environmental Multistate Trust LLC ("Greenfield") for the purchase of "Iron Ore Fines" located at a plant in Theodore, Alabama, near Mobile (the "Mobile Facility"). These Iron Ore Fines are a

byproduct of a former titanium extraction process at the Mobile Facility, and are an excellent iron source for the steel industry.

At the time Metawise entered into the Greenfield contract, there were at least 3 million metric tons of Iron Ore Fines at the former Mobile Facility. Metawise agreed to pay Greenfield for the right to remove the Iron Ore Fines, with the intent of shipping them to customers in China. The Greenfield Contract is currently scheduled to expire in March of 2015. This project is Metawise's only current operation.

Metawise hired Progressive Environmental Services, Inc. dba Eagle-SWS ("SWS") as its general contractor to manage the operation of this project. SWS was responsible for the material onsite operations and overall logistics. These responsibilities included delivering the material from the site to the nearest shipping terminal, operated by Millard Maritime Services ("Millard").

Unfortunately, the project immediately ran into difficulties, resulting in substantial delays. This led to disputes with SWS and Millard. Despite Metawise's contention that SWS mismanaged the project, SWS obtained a judgment in the amount of approximately $2.3 million, primarily as a result of an unconditional indemnification issued by Metawise in favor of SWS. As a result of the SWS lawsuit, the Debtors have been unable to make any progress on the project. This, combined with aggressive enforcement tactics by SWS, forced the present bankruptcy filing.

The only solution to the crisis created by the SWS lawsuit was to establish a new company that would be able to step in and restart the project. Draco was created to "put a new face" on Metawise in an effort to attract new customers and raise money to restart the Mobile project. Draco Resources was incorporated in California in August 2013. It is a wholly owned subsidiary of Metawise. There were 3 million metric tons of material and considerable value to be realized, but it was necessary to have a company other than Metawise undertaking these efforts. At the same time, the creation of Draco as a subsidiary of Metawise protected the rights of Metawise's creditors to any value that can be created through restarting the Mobile project.

**B.     Current Status**

The contract with Greenfield is Metawise's largest asset. Metawise spent more than $25 million in its initial efforts to get the project up and running and efforts to get it back on track

since the first failed effort to transport materials. The Mobile project will be key to any successful reorganization.

Metawise and Draco do not have any secured lenders. The Mobile project was funded through pre-payments by customers for the product to be delivered. This is standard in the Debtors' industry. These pre-payments were used as the necessary capital and financing to fund the project's operations. Customers who pre-paid are also Metawise's largest creditors, collectively holding claims of approximately $30 million, as a result of pre-payments for material that Metawise has so far been unable to deliver as a result of the difficulties with the Mobile project. Metawise anticipates that the customers will be supportive of its efforts to reorganize in bankruptcy, because reorganization and re-starting the Mobile project presents their only hope to receive anything on account of the money they have already paid to the Debtor. If the Mobile project is not restarted, the customers will not receive any of the product they paid for, and Metawise has no money to repay these customers.

Metawise entered into an agreement with Draco that provided Draco would be responsible for arranging the removal and transport of the Iron Ore Fines that Metawise was entitled to under the Greenfield contract. The sole purpose of establishing Draco was as an operating company to restart the work on the Mobile project and begin shipping material to customers. Restarting the project would also provide the necessary revenue to sustain the operations and pay Metawise's creditors.

In order to restart the Mobile project, the Debtors need to locate funding. They have been in discussions for some time with Armco Metals Holding, Inc. ("Armco"), a publicly traded Nevada corporation, for this purpose. The original plan for a merger with Armco through a stock exchange transaction has been halted by SWS's collection efforts and the bankruptcy filing. The Debtors' objective is to find a way to structure a plan around a merger with Armco, although they remain open to other funding options.

**C.     Filing Of Bankruptcy And Reorganization Efforts**

Because of the aggressiveness of SWS's collection strategy, and the Debtors' inability to pay the judgment, bankruptcy was the only logical decision for Metawise and Draco. Chapter 11

filings were the only option to control the process and prevent SWS's collection efforts from immediately causing the company to implode. The objective is that bankruptcy will allow the necessary space for Metawise and Draco to raise the necessary capital through an agreement with Armco, which in turn will provide a reasonable basis for Metawise and Draco to negotiate with Greenfield for an extension of the Greenfield contract.

In the meantime, Metawise and Draco are working to establish smaller working agreements that will provide additional money to help sustain operations, including an agreement for Draco to supply woodchips to a customer. Any such contracts will only provide a modest amount of revenue, which will help cover the operating expenses of the business.

The outcome of the case will turn on whether Metawise and Draco are able to restart the Mobile project and start shipping iron ore. Once the project is restarted, the companies can begin delivering qualified material. Once the Mobile project has been restarted and material is being shipped, Metawise and Draco believe that they will be able to find additional new customers to purchase more of the material. These revenues will be used to sustain operations and to fund payments to creditors.

**D.** **Employees and Payroll**

The Debtors have pared down their workforce as a result of their financial situation, and currently have only three employees. All three employees are employed by Draco as the operating company. Metawise does not have any paid employees. The officers of the Debtors' are not compensated in their role as officers because of the financial hardship of the companies.

The employees are paid monthly, on the first business day of the following month. Monthly payroll is approximately $13,400 for all three employees. The Debtors failed to pay the payroll due November 1, 2014, for the month of October. The next payroll date fell on December 1, 2014, for the month of November, and thus included both the post-petition period from November 13 through November 30, and the pre-petition period from November 1 through November 12. The employees are therefore owed prepetition wages for the period from October 1, 2014, through November 12, 2014.

In the case of each of the three employees, their pay for the 43-day pre-petition period from October 1 through November 12 would be less than $7,500. Even including sick leave and vacation entitlements, no employee is entitled to an amount in excess of $11,725. The total amount required to pay prepetition wages owed is approximately $18,700.

Further, the Debtors believe that it is important to honor their employee benefit obligations to the fullest extent permissible. If the Debtors are permitted to honor benefit obligations up to an aggregate of $11,725 (less the amount of any paid pre-petition wages), this will allow the employees to enjoy full benefits. This will be a significant factor in sustaining employee morale and loyalty in the face of this bankruptcy filing.

## I. RELIEF REQUESTED

The Debtors seek authority to promptly pay the full amount of all wages accrued pre-petition to all employees, in the approximate amounts set forth above. The Debtors also seek authority to honor all vacation and sick leave benefit obligations to the employees.

The Debtor's proposed order is attached hereto as **Exhibit A**.

## IV. BASIS FOR RELIEF REQUESTED

The Debtors believe that it is critical that the employees receive their pay in full, and without any further delay notwithstanding the bankruptcy filing. Draco therefore seeks to honor its obligations to employees post-relief and intends to assume them under any plan of reorganization.

It is generally recognized that the continuation of a stable employee base and harmonious employee relations in operating a Chapter 11 case are critical to a successful reorganization. As the court noted in In re Chateauguay Corporation, "[e]mployee good will and contentment is an asset which is vital to the continuation of a debtor's business operations and its ability to effectively reorganize during the Chapter 11 process." 116 B.R. 887, 898 (Bankr. S.D.N.Y. 1990) (citations omitted). Here, further delay in funding payroll for October and the first two weeks of November will likely create panic and discontent among the employees, sabotaging the Debtors' effort to reorganize.

1  Cases have permitted unequal treatment of pre-petition debts when necessary for
2  rehabilitation, in such contexts as (i) pre-petition wages to key employees; (ii) hospital malpractice
3  premiums incurred prior to filing; (iii) debts to providers of unique and irreplaceable supplies; and
4  (iv) peripheral benefits under labor contracts. In re Adams Apple, 829 F.2d 1484, 1490 (9th Cir.
5  1987). This is especially appropriate in the case of honoring priority claims that would otherwise
6  be paid prior to general unsecured creditors in any case.

7  The Debtor also has a duty under 28 U.S.C. § 959(b), which requires a debtor-in-
8  possession to manage and operate the property in its possession in accordance with applicable
9  state law. Applicable California law requires an employer to pay all wages timely and imposes
10 penalties for failure to do so. Specifically, California Labor Code § 204 requires an employer to
11 timely fund semi-monthly wages, and California Labor Code §§ 203 and 203.1 impose penalties
12 for failure to pay or the dishonor of paychecks.

13 Numerous Chapter 11 cases in this district have authorized a debtor-in-possession to pay
14 pre-relief wages and benefits so long as it does not exceed the statutory priority cap under 11
15 U.S.C. § 507(a)(4). See, e.g., In re Pacific Metro, LLC, Case No. 10-55788-RLE (Bankr. N.D.
16 Cal. June 15, 2010); In re Heller Ehrman, LLP, Case No. 08-32514-DM (Bankr. N.D. Cal. Dec.
17 30, 2008); In re Globalign, Inc., Case No. 08-31329-DM (Bankr. N.D. Cal. July 28, 2008); and In
18 re SecuGen Corporation, Case No. 05-53834-ASW (Bankr. N.D. Cal. July 1, 2005). At this
19 critical state of the case, the Debtor cannot risk a significant disruption caused by low employee
20 morale due to the Debtor's failure to pay wages when due.

21 It is important that the Debtor fund the full amount of its current and past-due payroll, as
22 timely as possible. The Debtors therefore request authorization to fund the full amount of the
23 past-due November 1 payroll, as well as the payroll that was due on December 1, 2014. To the
24 extent this is authorized, the shareholders of Metawise are prepared to inject sufficient cash into
25 the company to fund immediate payroll requirements.
26 / / /
27 / / /
28 / / /

00047545-1                                                                7    MOTION FOR ORDER AUTHORIZING DEBTOR
                                                                                 TO PAY EMPLOYEE WAGES
Case: 14-31652    Doc# 23    Filed: 12/09/14    Entered: 12/09/14 14:58:43    Page 7 of 8

## V. CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter an order granting the relief requested herein, in the form attached hereto.

DATED: December 9, 2014                McNUTT LAW GROUP LLP

By: _____/s/ *Shane J. Moses*_____
    Shane J. Moses
    Attorneys for DEBTORS