1  McNUTT LAW GROUP LLP
   SCOTT H. McNUTT (CSBN 104696)
2  MICHAEL C. ABEL (CSBN 187743)
   SHANE J. MOSES (CSBN 250533)
3  219 9th Street
   San Francisco, California 94103
4  Telephone: (415) 995-8475
   Facsimile: (415) 995-8487
5
   Attorneys for DEBTORS
6

7

8              UNITED STATES BANKRUPTCY COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                 SAN FRANCISCO DIVISION

11 | In re                          | Case Nos.    14-31652-DM
   |                                |              14-31654-DM
12 | METAWISE GROUP, INC.,          |              (Jointly Administered)
   | DRACO RESOURCES, INC.,         |
13 |                                | Chapter 11
   |         Debtors.               |
14 |                                | **MOTION TO EXTEND TIME TO**
   |                                | **ASSUME OR REJECT UNEXPIRED**
15 | ☐ Affects **METAWISE**         | **LEASES OF NONRESIDENTIAL REAL**
   |                                | **PROPERTY**
16 | ☒ Affects **DRACO**            |
   |                                | Judge:   Hon. Dennis Montali
17 | ☐ Affects **BOTH DEBTORS**     |
   |                                | *TENTATIVE HEARING DATE:*
18 |                                |
   |                                | Date:    April 17, 2015
19 |                                | Time:    10:00 a.m.
   |                                | Place:   235 Pine Street
20 |                                |          19th Floor
   |                                |          San Francisco, California
21 |                                |

22

23        Draco Resources, Inc. ("Draco"), one of the debtors and debtors in possession (the other

24 being Metawise Group, Inc. "Metawise," together with Draco, the "Debtors") in the above-

25 captioned jointly administered bankruptcy cases, hereby requests that this Court enter an order

26 pursuant to section 365(d)(4)(B) of the Bankruptcy Code extending the period for 90 days within

27 which Draco may assume or reject a prepetition unexpired lease of nonresidential real property

28 (the "Lease") under which Draco is the lessee, until and including June 11, 2015.

## I. JURISDICTION

On November 13, 2014, Draco and Metawise filed voluntary petitions under Chapter 11 of the Bankruptcy Code. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334(a). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. The subject matter of the Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O). The statutory predicates for the relief requested herein is provided by § 365(d)(4)(B) of the Bankruptcy Code.

## II. BACKGROUND AND FACTS

### A. Background

Metawise Group is a California corporation duly organized under the laws of the state and was incorporated on or about February 25, 1997. Draco was formed in 2013, to act as the sales broker and operating company for the business. Since the formation of Draco, the Debtor companies together make up one integrated business. The Debtors are an international trading company specializing in the procurement and supply of key raw materials for the global steel industry and recycled material such as plastic, paper, and scrap metal. The Debtors have customers all over the globe, with many important and close relationships with high profile companies in the Chinese steel industry.

In early 2010, Metawise entered into a purchase and sale agreement with Greenfield Multistate Trust ("Greenfield") for the purchase of "iron ore fines." Greenfield is the trustee of a former titanium mining facility located in Theodore, Alabama (the "Alabama Facility"). The Alabama Facility has approximately five million tons of iron ore fines that are the byproduct of titanium extraction. These iron ore fines are an ideal iron source for steel makers in China. Metawise agreed to pay Greenfield for the right to remove the iron ore fines, with the intent of shipping them to customers in China. The agreement with Greenfield is currently scheduled to expire in March 2015. This project is the Debtors' only current operation.

The project at the Alabama Facility has been largely halted as a result of various issues with the initial shipment of material and subsequent disputes with the Debtors' general contractor, Performance Environmental Services, Inc. dba Eagle-SWS ("SWS").

000495144 Case: 14-31652    Doc# 62    Filed: 03/13/15    Entered: 03/13/15 16:27:29    Page 2 of 7

The contract with Greenfield is the largest asset involved in these cases and Metawise spent more than $25 million in its initial efforts to get the project up and running and efforts to get it back on track since the first failed effort to transport materials. This was funded through prepayments by customers for the iron ore fines to be delivered. These prepayments were used as the necessary capital and financing to fund the project, as is standard in this industry. Unfortunately, because of the issues with its contractor, the Debtors were unable to deliver the iron ore fines. As a result, these pre-paid customers are Metawise's largest creditors, collectively holding claims of approximately $30 million. Draco's primary creditors are a small number of consultants involved in more recent shipment of iron ore fines in early 2014.

A fuller presentation of the Debtors' background, the circumstances which led to the instant Chapter 11 filing, and the Debtors' expectations regarding their reorganization is set forth in the DECLARATION OF SONGQIANG CHEN IN SUPPORT OF INITIAL MOTIONS filed on December 9, 2014 [docket no. 24] (the "Initial Declaration").

The Debtors anticipate that the customers will be supportive of its efforts to reorganize in bankruptcy because it is their only hope to receive anything on account of the money they have already paid. If the Alabama project is not restarted, the customers will not receive any of the product they paid for and the Debtors have no money to repay these customers.

**B.**     **Intended Reorganization**

Bankruptcy was the only realistic option for the Debtors to control the process and ensure that the collection efforts of SWS do not cause the companies to implode. Bankruptcy will allow the Debtors the space to raise the necessary capital to provide a reasonable basis to negotiate with Greenfield for an extension of the contract.

The essential steps to a successful reorganization are finalizing agreements to raise the necessary capital to fund restarting the Alabama project, and reaching agreement with Greenfield for an extension of the Greenfield contract. The Debtors have also been engaged in discussions with Greenfield regarding an extension of the contract for removal of the iron ore fines. The Debtors believe that the success of these negotiations will largely turn on the Debtors' ability to demonstrate funding sufficient to restart the shipments.

Prior to the filing of the bankruptcy cases, the Debtors had reached an agreement with a potential investor, Armco Metals Holding, Inc., a publicly traded Nevada corporation. Although the agreement was subject to approval of Armco's shareholders, the general structure involved an exchange of approximately 31% of the ownership of Draco for approximately 20% of the shares of Armco, which could then be used as security to raise the necessary funds for the Debtors' operations. It is the Debtors' understanding that Armco is still willing to enter into a similar agreement in connection with a Chapter 11 plan, provided the pending creditor issues can be resolved quickly through the bankruptcy process. The Debtors believe that an agreement with Armco presents the best opportunity for obtaining the necessary financing, and have been engaged in discussions with Armco during the course of the case. The Debtors are optimistic that these discussions will lead to a concrete proposal within the next few weeks.

The outcome of the case will turn on whether the Debtors are able to restart the Alabama project and start shipping iron ore. Once the project is restarted, the companies can begin delivering qualified material to customers that have prepaid for it. Once the Alabama project has been restarted and material is being shipped, the Debtors believe that they will be able to find additional new customers to purchase more of the material. These revenues will be used to sustain operations and to fund payments to creditors. Unless this can be accomplished, there are simply no assets that could be used to generate any material return to creditors.

It is essential that this case proceed quickly over the next few months. A successful reorganization will require that the Debtors present a plan that incorporates both a transaction to provide funding and an extension of the Greenfield contract within a matter of a few months. The Debtors expect to propose a plan of reorganization within the next two to three months, which will provide for substantial payments to all creditors over a period of perhaps five years, funded from revenues generate through sale of iron ore fines from the Alabama project.

**C.** **The Lease**

Metawise and Draco lease space for their offices in Foster City, California. The office space was originally leased from the Marin County Employee's Retirement Association as landlord, but the building was recently acquired by DWF IV Century Plaza, LLC (collectively, the

000495144    Case: 14-31652    Doc# 62    Filed: 03/13/15    Entered: 03/13/15 16:27:29    Page 4 of 7
MOTION TO EXTEND TIME
TO ASSUME OR REJECT LEASES

"Landlord"). The Landlord and Metawise first entered into the Lease on January 16, 2003. The Lease was subsequently amended a number of times. The most recent amendment (the "Sixth Amendment") was entered into between the Landlord and Metawise on March 24, 2014. On June 10, 2014, the Landlord, Metawise, and Draco entered into an assignment agreement (the "Assignment Agreement") which assigned the tenancy interest in the Lease from Metawise to Draco.[1]

Draco is a tenant of the Landlord at 1065 E. Hillsdale Blvd., Suite 318, Foster City, California, 94404 (the "Premises"). The Premises consist of approximately 1,351 square feet of office space. The Premises serves as the principal offices of both Draco and Metawise.

As provided in the Sixth Amendment, the term of the lease is through May 31, 2017. The monthly rent for the Premises is $10,802.70 per month, due on the first day of each month. The Lease provides for small increases in monthly rent over time, rising to $12,003.00 by the end of the Lease term.

**D.**     <u>**The Need for an Extension of Time To Assume or Reject**</u>

As set forth above, the Debtors are still pursuing negotiations regarding the critical agreements necessary for a successful plan. Until more progress is made on those negotiations, it is impossible to determine with any certainty whether it will be possible for the Debtors to propose a feasible plan at this time. Within the next two to three months, it should be clear whether the Debtors will be able to propose a plan of reorganization.

The current deadline (without the extension) for Draco to assume or reject the Lease under the Bankruptcy Code is March 13, 2015, which is 120 days from the Petition Date. In the circumstances as described above, Draco is not able to make an informed decision regarding whether to assume or reject the lease at this time.

---

[1] The Lease, as defined herein, includes the original 2003 lease and all subsequent amendments and assignments. The original Lease agreement, the Sixth Amendment, and the Assignment Agreement are all attached as exhibits to the Chen Declaration.

000495144 Case: 14-31652    Doc# 62    Filed: 03/13/15    Entered: 03/13/15 16:27:29    Page 5 of 7

### III. AUTHORITY FOR RELIEF REQUESTED

A debtor in possession has 120 days from the petition date to assume or reject a lease of nonresidential real property under which the debtor is the lessee. 11 U.S.C. § 365(d)(4)(A). However, this deadline may be extended by 90 days "for cause." 11 U.S.C. § 365(d)(4)(B)(i).

The statute does not specify the grounds sufficient to constitute cause for an extension of time. As is typical when the Bankruptcy Code provides for relief in this manner, the courts look to the totality of the circumstances to determine whether relief should be granted. Courts have considered a variety of factors in making the determination. These factors include: (i) whether the lease is a primary asset of the estate; (ii) potential prejudice to the landlord from noncompensable damages; (iii) whether the landlord would receive a windfall; (iv) whether the case is unusually large or complex; (v) whether the trustee or debtor in possession has had a reasonable period of time to analyze the estate and formulate a reorganization plan. *See In re Victoria Station Inc.*, 88 B.R. 231, 236 n. 7 (B.A.P. 9th Cir. 1988) *aff'd*, 875 F.2d 1380 (9th Cir. 1989); *In re Ernst Home Ctr., Inc.*, 221 B.R. 243, 253 (B.A.P. 9th Cir. 1998); *In re Muir Training Technologies, Inc.*, 120 B.R. 154, 158 (Bankr. S.D. Cal. 1990); *see also* 3 *Collier On Bankruptcy* § 365.04[3][f] (Alan N. Resnick & Henry J. Sommer eds.,15th ed. rev. 2009).

The Lease is a significant asset of the Draco's bankruptcy estate. The Premises are the principal offices of both Draco and Metawise, and any disruption of the Lease could potentially hamper the reorganization efforts of both Debtors. Because bankruptcy courts are courts of equity, they are compelled to disfavor a lease forfeiture that would imperil the debtor's reorganization and impede rehabilitative goals. *In re Victoria Station Inc.*, 840 F.2d at 684. Here, a premature rejection of the Lease could potentially oust both Debtors from the Premises and severely impede their reorganization.

The Landlord will suffer no noncompensable damages for this extension of the deadline under section 365(d)(4). The Premises is a generic office space, and extension of the time to assume or reject the lease will not create any noncompensable damages. If the Lease is ultimately assumed, the Landlord would be entitled to all of the relief afforded by section 365(b), including the payment of any amounts due under the lease prior to the petition date and any pecuniary losses

suffered postpetition. *See In re Ernst Home Ctr.*, 221 B.R. at 256. The Landlord whose lease was rejected would have the right to assert an unsecured claim for damages against the estate and would share in the distribution of funds. *See id.*

The most compelling reason for extending the time for Draco to assume or reject the Lease is that both Debtors are still working with other parties to determine their options in bankruptcy at this moment. The Debtors are currently involved in complex negotiations with Greenfield and with Armco, which will determine whether a plan of reorganization will be feasible. If these negotiations result in agreements necessary to propose a feasible reorganization, Draco will most likeley assume the Lease. If plans of reorganization are not feasible, the Draco will reject the lease. It would be detrimental to the estates of the Debtors to be unable to maintain their existing offices during this process. On the other hand, it would be highly prejudicial to the rights of creditors for Draco to be forced to assume the lease now, potentially creating a very large administrative claim in the event that the Debtors efforts are unsuccessful.

## IV. <u>CONCLUSION</u>

WHEREFORE, Draco respectfully requests entry of an order:

1. Extending the time for Draco to assume or reject the Lease by 90 days, to and including June 11, 2015; and

2. Granting such other and further relief as the Court deems just and proper.

DATED: March 13, 2015          MCNUTT LAW GROUP LLP


By: _____*/s/ Shane J. Moses*_____
Shane J. Moses
Attorneys for DEBTORS

000495144 Case: 14-31652   Doc# 62   Filed: 03/13/15   Entered: 03/13/15 16:27:29   Page 7 of 7

MOTION TO EXTEND TIME
TO ASSUME OR REJECT LEASES