SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
ROBERT K. SAHYAN, Cal. Bar No. 253763
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email:        okatz@sheppardmullin.com
              rsahyan@sheppardmullin.com

Attorneys for Official Committee of Unsecured
Creditors


# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION


| | |
|---|---|
| In re | Case No.      14-31652-DM |
| METAWISE GROUP, INC., | Chapter 11 |
| Debtor. | **COMBINED PLAN OF LIQUIDATION AND DISCLOSURE STATEMENT, DATED SEPTEMBER 22, 2015** |
| | <u>Confirmation Hearing:</u> |
| | Date:      November 5, 2015 |
| | Time:      10:30 a.m. |
| | Place:     United States Bankruptcy Court |
| | 235 Pine Street, 19th Floor |
| | San Francisco, CA 94104 |
| | Judge:     Hon. Dennis Montali |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ............................................................................................................1

II. EXECUTIVE SUMMARY ...........................................................................................1

III. STRUCTURE OF THE PLAN .....................................................................................4

IV. BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION ..........................4

    A.    Events Leading to the Bankruptcy Filing According to the Debtor .......................5

    B.    Assets and Liabilities According to the Debtor .................................................6

V. MAIN EVENTS IN THE BANKRUPTCY CASE ...........................................................7

    A.    Joint Administration.................................................................................7

    B.    Formation of Committee ..........................................................................7

    C.    Employment of Professionals ....................................................................7

    D.    Standing Stipulation................................................................................8

    E.    Draco Conversion ..................................................................................8

    F.    The Greenfield Settlement .......................................................................9

VI. CLASSIFICATION AND TREATMENT OF CLAIMS .................................................10

    A.    Class 1:  Secured Claims........................................................................10

    B.    Class 2:  General Unsecured Claims.........................................................12

    C.    Class 3:  Equity Holders ........................................................................14

VII. TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS .............................14

    A.    Administrative Claims............................................................................14

    B.    Priority Tax Claims...............................................................................15

VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES........................................16

IX. IMPLEMENTATION OF THE PLAN .......................................................................17

    A.    Funding the Plan ..................................................................................17

    B.    Liquidating Trust .................................................................................17

C.     Avoidance Actions and Other Causes of Action ..................................................18

D.     Objections to Claims.................................................................................................19

E.     Dissolution of Creditors Committee .........................................................................19

F.     Role and Powers of the Plan Committee ...................................................................19

G.     Dissolution of the Debtor ..........................................................................................19

H.     Resignation of Officers and Directors ......................................................................20

X. EFFECTIVENESS OF THE PLAN ..........................................................................................20

XI. MISCELLANEOUS PROVISIONS ........................................................................................20

A.     Retention of Jurisdiction ...........................................................................................20

B.     Effectuating Documents and Further Transactions...................................................20

C.     Preservation of Causes of Action..............................................................................21

D.     Post-Confirmation United States Trustee Fees. ........................................................21

E.     Effect of Conversion to Chapter 7. ...........................................................................21

F.     Notices. ......................................................................................................................21

G.     Post-Effective Date Notices.......................................................................................21

H.     Plan Controls..............................................................................................................22

I.     Applicable Law ..........................................................................................................22

XII. RECOMMENDATION AND CONCLUSION ........................................................................1

**Exhibit A:** Liquidating Trust Agreement

**Exhibit B:**   Special Litigation Counsel Compensation Terms

**Exhibit C:** List of Entities Who May Have Received a Transfer

**Exhibit D**: Curriculum Vitae of Liquidating Trustee - Randy Sugarman

# I.
# INTRODUCTION

This Combined Chapter 11 Plan of Liquidation and Disclosure Statement (the "*Plan*") provides for the liquidation or other disposition of the assets of Metawise Group, Inc. ("*Metawise*" or the "*Debtor*").  The next section of the Plan (Part II) contains an executive summary of the Plan's terms.

The Plan is proposed by the Official Committee of Unsecured Creditors (the "*Committee*") appointed in the bankruptcy case of the Debtor.  The Plan in Part VI describes how each claim will be treated if the Plan is confirmed.

A hearing on confirmation of the Plan will be held on November 5, 2015, at 10:30 a.m. as described in the enclosed notice ("*Confirmation Hearing Notice*").  The date the Court enters its order confirming the Plan is referred to as the "*Confirmation Date*."  The "*Effective Date*" of the Plan will be the fifteenth (15th) business day after the Confirmation Date, provided the condition to effectiveness of the Plan set forth in paragraph 3 of Article X of this Plan (regarding the approval of the Greenfield Settlement described further below) has been satisfied.  To the extent such condition is not then satisfied, the Effective Date shall occur on the day such condition becomes satisfied, provided that such date is not later than ninety (90) days after the Confirmation Date.

You may be entitled to vote on the Plan, or to object to confirmation of the Plan.  A ballot that can be used to vote on the Plan, along with the Confirmation Hearing Notice, is enclosed in the package containing this Plan.  Please refer to the Confirmation Hearing Notice for the deadline to return the ballot and the deadline to file objections.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here.  You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

# II.
# EXECUTIVE SUMMARY

The Plan is premised on the implementation of a settlement ("*Greenfield Settlement*") that the Committee has negotiated with Greenfield Environmental Multistate Trust LLC, Trustee of the Multistate Environmental Response Trust ("*Greenfield*"), which settlement remains as of the date of this Plan subject to the bankruptcy court approval.  If approved, the Greenfield Settlement will fund $865,000 into the Debtor's estate.  This amount will be used to fund the Plan on the Effective Date.

The Committee has conducted a preliminary investigation of the Debtor, its assets, and liabilities. Based on the information provided to date, the Committee has concluded that there is no going concern value to the Debtor's business. Nor does the Committee believe that there are any tangible personal or real property assets of value that could be readily liquidated to fund a meaningful recovery to creditors.

The Committee has reviewed certain books and records of the Debtor, certain bank records relating to accounts of the Debtor, and certain of the Debtor's general ledgers.  Those

documents reflect certain transfers and/or payments made during the period from 2009 to the Debtor filing for bankruptcy relief (collectively, the "*Transfers*") that add up to approximately $105 million. As of the date of the filing of this Plan, the Committee is unable to conclude with certainty whether the Transfers were appropriate and ordinary, or possibly improper and subject to avoidance and recovery. Based on a preliminary review of the records available thus far, it is believed that such amount may reflect double counting of certain funds that were paid out, paid back in and paid out again. It is further believed that, when such double counting is accounted for, the actual amount of total Transfers that were paid out is in the range between $25 million to $30 million. Assuming the Greenfield Settlement becomes effective, the relevant amounts to consider would be less because it would exclude any Transfers made to Greenfield. The Transfers that remain to be investigated may or may not be recoverable for the benefit of creditors, and may represent ordinary and appropriate transactions conducted by the Debtor. The Committee believes that additional investigation and fact-finding regarding such Transfers is needed in order to determine whether and to what extent they may be recoverable for the benefit of the estate, and the Committee is currently limited in its access to information, data and records. A clearer picture will be drawn once more information is accessed and a closer examination and analysis of the Transfers is conducted.

As background, by way of an order entered by the Bankruptcy Court, the Committee obtained standing to pursue certain such causes of action against certain recipients of the Transfers. The purpose of the Plan is to expand the work initially undertaken by the Committee and allow it to be completed by a Liquidating Trustee with broader rights, powers and privileges than the Committee. The proposed Greenfield Settlement is an example of the exercise of the standing approved under this order.

The ultimate recovery to creditors beyond that available from the funds expected to come in from the settlement with Greenfield will depend almost entirely on the Liquidating Trustee's (and his professionals') ability to conclude the investigation already underway, file lawsuits if appropriate, and recover transfers. The work of pursuing such lawsuits (if they proceed) will be handled on a contingent fee basis. The potential targets of such avoidance actions are listed on Exhibit C to the Plan, which include creditors who have received a Transfer. A majority of the creditors are listed on this exhibit. Pursuant to section 502(d) of the Bankruptcy Code, if the Liquidating Trustee (or a chapter 7 trustee) pursues an avoidance action against a creditor and the Court determines that such a creditor is liable on account of such Transfer it received, such creditor's claim against Debtor will be disallowed unless such creditor returns such Transfer.

No recovery is guaranteed as a result of the Liquidating Trustee's further actions. But, under the difficult circumstances of this case, the Committee believes that the approach embodied in this Plan provides the best prospect for a recovery to creditors if it ultimately turns out there were avoidable Transfers.

The Committee has not had unfettered access to the Debtor's books and records, although a limited informal document production has been made by the Debtor, and the Debtor has generally been accommodating and cooperative. The Committee's inability to access complete books and records has made it difficult for the Committee to complete its analysis of the Transfers, and as a result the Committee cannot in this Plan provide detailed projections regarding the ultimately potential recovery to creditors.

The Committee has considered conversion of the case to chapter 7. Ultimately the Committee concluded that proceeding via a chapter 11 plan of liquidation was superior for four reasons (the "*Liquidation Analysis*"). First, the Committee has already identified the Liquidating Trustee, and the Liquidating Trustee in turn has already committed to continuing the investigation relating to the Transfers. There is concern that a chapter 7 trustee, under the circumstances of this case, might choose to abandon the assets and not pursue investigation of the Transfers. It should be noted that in a chapter 7, the chapter 7 trustee has certain mandatory duties set forth in section 704 of the Bankruptcy Code. In comparison, a Liquidating Trustee is only bound contractually by the terms of the Liquidating Trust Agreement (defined further below). In addition, in a chapter 7 scenario, the following applies: (a) a chapter 7 trustee must furnish bond in favor of the United States conditioned on the faithful performance of the trustee's duties (the bond is typically not a significant amount and does not represent a significant source of recovery), (b) the chapter 7 trustee's compensation is subject to review and subject to a maximum in varying percentages set forth in section 326 of the Bankruptcy Code of all moneys disbursed or turned over in the case (which maximum ranges from 25% to 3% according to a sliding scale that decreases as the amount of disbursement increases), and (c) the employment and compensation of the chapter 7 trustee's professionals are subject to court approval.

Second, the Committee has already obtained the commitment of Diamond McCarthy (defined below) to work on a contingent fee basis (plus a flat fee and reimbursement of expenses) with the Liquidating Trustee to pursue recovery of the Transfers in the event further investigation reveals such pursuit is appropriate. While Diamond McCarthy might also agree to work with a chapter 7 trustee if one is appointed, Diamond McCarthy has reserved the right to re-evaluate the terms of its employment in that situation. Significant time and effort went into bringing Diamond McCarthy into the case to begin with. It is unclear what arrangement, if any, a chapter 7 trustee might be able to reach with Diamond McCarthy or any other contingent fee lawyer.

Third, the Plan provides for the creation of a "Plan Committee." Such a committee is important in keeping the Liquidating Trustee and Diamond McCarthy motivated and moving forward. While creditors will have a voice in a chapter 7, they will not be organized and involved in the process in the same way they will when they are organized as a Plan Committee.

In short, the Plan presents a superior alternative to a chapter 7 liquidation. Creditors' potential recovery under the Plan is not expected to be less than what could be obtained in a hypothetical chapter 7 liquidation. The analysis outlined above and the circumstances of the case lead the Committee to believe that the recovery in a chapter 7 scenario might be limited to the funds from the Greenfield Settlement. This is because there are no material tangible assets to liquidate and any recovery is expected to come from the prosecution of the Causes of Action. By putting in place a Liquidating Trustee and counsel who have already committed to investigate and, if viable, pursue the Causes of Action, the Plan makes it more likely that the causes of action will be liquidated to generate additional recovery to the estate. The support, motivation and involvement that will be provided by the Plan Committee (which would not be available in a chapter 7) bolsters this conclusion. As such, it is more likely that a higher recovery can be obtained under the Plan than in a hypothetical chapter 7 scenario and, even if it were ultimately in the form of low value recoveries in settlement of claims, such recoveries would be better than (and certainly no worse) than the expected result in a chapter 7.

# III.
# STRUCTURE OF THE PLAN

The Plan provides for the creation of a Liquidating Trust to be administered by a Liquidating Trustee. The Liquidating Trustee under the Liquidating Trust will be tasked with liquidating the Debtor's assets and distributing net proceeds (if any) to the creditors of the Debtor.

The Liquidating Trustee will have the power and authority to prosecute the claims held by the estate and to sell or otherwise dispose of any other assets of the estate and distribute the net proceeds to the creditors. The majority of the potential assets of the estate are believed to consist of avoidance causes of action under Bankruptcy Code sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553, or under related state or federal statutes and common law, and other claims held by Metawise's estate (collectively, the "***Causes of Action***").

An amount of $865,000 in cash is anticipated to be available shortly from the settlement the Committee has negotiated (described further below). A portion of this amount is anticipated to be used to pay for all Allowed Administrative Expenses of the bankruptcy case and the balance will be used to fund the Liquidating Trust.

Any further recoveries generated from the prosecution of the Causes of Action or from any other source (collectively, the "***Recoveries***")[1] will be used to make distributions to creditors after payment of the fees and costs of the Liquidating Trust, including the fees and costs associated with litigating the Causes of Action. Recoveries remaining after the foregoing costs and fees are referred to in the Plan as "***Net Recoveries***." The Net Recoveries will be used to make distributions to the unsecured creditors holding allowed claims, pursuant to or consistent with the Bankruptcy Code. Any distribution made to unsecured creditors from the Net Recoveries is referred to herein as "***Unsecured Creditor Distribution***."

Special litigation counsel that the Committee sought to retain in the bankruptcy case has already commenced the analysis of some of the Causes of Action and such counsel is expected to be retained by the Liquidating Trustee following the Effective Date to continue the prosecution of the Causes of Action. The special litigation counsel is anticipated to represent the Liquidating Trustee only with respect to the prosecution of the Causes of Action. Committee's counsel (Sheppard Mullin) is anticipated to represent the joint interest of the Liquidating Trustee and the Plan Committee in connection with claim objection and other bankruptcy matters other than the prosecution of Causes of Action.

# IV.
# BACKGROUND OF THE DEBTOR AND FINANCIAL INFORMATION

Metawise is a California corporation, incorporated on or about February 25, 1997. Currently Metawise has no operations. Prior to its bankruptcy filing, Metawise operated in the

---

[1] Recoveries shall not include any value received by the Estate or the Liquidating Trust from the disallowance of any claims resulting from resolution of Causes of Action.

procurement and supply of key raw materials for the global steel industry and recycled material such as plastic, paper, and scrap metal.

On November 11, 2014 (the "**Petition Date**"), Metawise filed a voluntary petition under chapter 11 of the Bankruptcy Code in this Court, commencing bankruptcy case number 14-31652-DM (the "**Bankruptcy Case**"). Since the Petition Date, the Debtor has continued in possession of its properties and the management of its assets as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

## A.    Events Leading to the Bankruptcy Filing According to the Debtor

In early 2011, Metawise entered into a purchase and sale agreement (the "**Greenfield Contract**") with Greenfield for the purchase of "iron ore fines" (a powdered byproduct with high iron concentration that resulted from a chemical extraction process undertaken by the former owner of the site). Greenfield is the trustee of a multistate trust that controls a number of facilities, including a plant in Theodore, Alabama, near Mobile. At the time Metawise entered into the Greenfield Contract, there were at least 3 million metric tons of "iron ore fines" at the former Mobile facility. Metawise entered into the Greenfield Contract with the goal of shipping the material to customers in China. Metawise's customers prepaid for the delivery of the material, which prepayments are believed to be approximately $30 million. Prior to the Petition Date, Metawise paid Greenfield a total of approximately $5.2 million under the Greenfield contract, with that amount having been adjusted pre-petition as a result of several amendment to the agreement between the parties ($1 million was paid back prepetition by Greenfield to the Debtor). The large majority of these amounts were paid as "financial assurance" amounts, which were required under the Greenfield Contract to be provided at certain intervals to secure Metawise's obligations to Greenfield. Of these amounts, about $2,037,400 remained as of the Petition Date in the financial assurance account and continued to be held by Greenfield as security.

Metawise hired Progressive Environmental Services, Inc. dba Eagle-SWS ("**SWS**") as its general contractor to manage the operation of the project. SWS contracted with the shipping terminal, operated by Millard Maritime Services ("**Millard**") to process the shipment of the material through that facility. Unfortunately, there were difficulties even with the first shipment of material and the vessel with the partially loaded material was not permitted to transport the material. Disputes arose and SWS obtained a judgment in a Florida state court against Metawise in the approximate amount of $2.3 million. The vessel charter company also obtained an arbitration award in the approximate amount of $19 million against Metawise. Metawise ultimately sold the partial load to a customer in Mexico for considerably less than what it might have been sold for to the Chinese steel industry.

Subsequently, Draco Resources, Inc. ("**Draco**") was incorporated as a wholly-owned subsidiary of Metawise with the goal of restarting the work on the Mobile project. To that end, Metawise contracted with Draco to arrange the removal and transport of the iron ore fines from the Mobile location. However, litigation against Metawise continued, including litigation efforts to collect on the judgments. Metawise and Draco determined to file for bankruptcy protection. Metawise filed the Bankruptcy Case on the Petition Date. Also on the Petition Date, Draco filed its voluntary petition in this Court, commencing bankruptcy case number 14-31654-DM (the "**Draco Case**"). The Draco Case was jointly administered with Metawise case until the Draco

Case was converted to a chapter 7 case. This Plan provides for the liquidation of and administration of the Metawise case only, and does not address Draco or the Draco Case.

**B.     Assets and Liabilities According to the Debtor**

The Debtor filed its Schedules of Assets and Liabilities and Statement of Financial Affairs (collectively, "*Schedules*") shortly after the Petition Date, which disclose the following information.

1.     Assets

The Debtor does not possess any cash on hand as of the date of this Plan. The Schedules list the following assets (with values listed as stated on the Schedules):

(a)     $4 million provided to Greenfield under the Greenfield Contract (which, as stated above, was reduced to approximately $2,037,400 as of the Petition Date with $865,000 to be received by the estate if, as described below, the Greenfield Settlement is approved).

(b)     100% equity interest in Draco of unknown value.

(c)     2% equity interest in Metamining Inc., valued at $10.9 million based on the purchase price paid for the interest.

(d)     100% equity interest in Metawise Group Alabama, Inc. of unknown value.

(e)     A utility vehicle valued at $5,000.

(f)     Office furniture and equipment valued at $10,000.

(g)     Leasehold improvements of $5,000.

(h)     Residual interest in equipment delivered to Greenfield under the Greenfield contract of unknown value (which interest is proposed to be relinquished under the Greenfield Settlement).

2.     Liabilities

The Schedules list approximately $36.3 million dollars in liabilities, almost all of which are listed as disputed, contingent or unliquidated. The claims register in the case shows a total of approximately $62.4 million in claims filed.

Other than Greenfield, Baosteel and Barron (each of which is discussed below), who each filed a claim asserting secured status, the creditors are unsecured claimants. As a general matter, the unsecured creditors are the customers who prepaid for the delivery of the iron ore material, providers of goods and services, or judgment creditors.

Greenfield filed its Proof of Claim in the case on March 16, 2015 ("*Greenfield Secured Claim*"), asserting a secured claim in the amount of "$864,476.77 plus liquidated unsecured claim" plus an entitlement to interest at an annual interest rate of 18%. Greenfield has asserted

additional amounts for the period following the Petition Date. Greenfield's stated collateral consist of funds deposited by the Debtor as financial assurance securing the Debtor's performance of its obligations under the Greenfield Contract, of which collateral approximately $2,037,400 remained as of the Petition Date. The Committee has reached a settlement with Greenfield pursuant to the Greenfield Settlement that is subject to Court approval as of the date of this Plan. If approved, the Greenfield Settlement will resolve the Greenfield Secured Claim and result in a $865,000 recovery to the estate.

Baosteel Resources International Co., Ltd ("***Baosteel***") filed Proof of Claim no. 11 on March 9, 2015, asserting a secured claim in the amount of $5,779,063 (the "***Baosteel Secured Claim***"). The Baosteel Secured Claim is based on a guaranty executed by the Debtor and other guarantors of a $5,000,000 Commodities Purchase Contract by and between Spiro Mining, LLC and Baosteel, which guaranty is purportedly secured by the Debtor's personal property, with security interest subject to a UCC-1 financing statement. Because there is no known personal property of any significant value, Baosteel is believed to be completely undersecured.

Barron Redding, Inc. ("***Barron***") filed Proof of Claim no. 17, asserting a claim for $4,866.59 for prepetition legal service secured by a retainer balance of $15,236.87 (the "***Barron Secured Claim***"). The Barron Secured Claim was resolved pursuant to a stipulation between the Debtor and Barron, whereby Barron was permitted to apply $4,866.59 to satisfy the Barron Secured Claim and release the $10,370.28 balance, which stipulation was approved by the Court pursuant to its order entered on March 30, 2015 (the "***Barron Stipulation***").

# V.
# MAIN EVENTS IN THE BANKRUPTCY CASE

## A.     Joint Administration

On December 18, 2014, the Court entered its order approving the joint administration of the bankruptcy cases of the Debtor and Draco. The bankruptcy cases of the Debtor and Draco continued to be jointly administered until the conversion of the Draco Case to chapter 7. No trustee or examiner has been appointed in the Debtor's Bankruptcy Case.

## B.     Formation of Committee

On December 17, 2014, the U.S. Trustee filed its *Appointment and Notice of Appointment of Official Committee of Unsecured Creditors* [Dkt. No. 31], to appoint the Committee. The following are the members of the Committee: Huaze International Investment (Hong Kong) Ltd., Progressive Environmental Services, Inc., and Lucas Newman Science & Technologies, Inc.

## C.     Employment of Professionals

On January 6, 2015, Debtor filed its *Application for Order Authorizing Employment of McNutt Law Group LLP as Bankruptcy Counsel* [Dkt. No. 39] seeking an order authorizing the Debtor to employ McNutt Law Group LLP ("***MLG***") as general bankruptcy counsel for the Debtor effective as of November 14, 2014. The Court initially approved MLG's employment pursuant to an order entered on January 8, 2015. The U.S. Trustee subsequently brought a *Motion to Vacate Order Authorizing Employment of McNutt Law Group LLP as Bankruptcy*

*Counsel* on January 23, 2015, which the Court denied pursuant to an order entered on February 28, 2015, after entering a supplemental order amending the employment of the MLG.

The Court approved Sheppard Mullin Richter & Hampton LLP ("**Sheppard Mullin**") as counsel for the Committee effective as of January 30, 2015 pursuant to an order entered on February 18, 2015.

On March 5, 2015, the Committee filed its *Application for Order Authorizing Employment of Stapleton Group as Financial Advisors for the Official Committee of Unsecured Creditors*. Pursuant to an order entered on April 16, 2015, the Court approved the retention of Stapleton Group as financial advisors to the Committee, effective as of February 17, 2015.

The professionals retained during the Bankruptcy Case prior to the Confirmation Date are referred to herein as the "**Professionals**".

The Committee filed an application to retain Diamond McCarthy LLP (the "**Diamond McCarthy**") as special litigation counsel, pursuant to its *Application to Employ Diamond McCarthy LLP as Special Litigation Counsel for the Official Committee of Unsecured Creditors* filed on April 27, 2015. An amended application for the same purpose was filed on May 7, 2015. Debtor filed its *Limited Objection to Amended Application for Order Authorizing Employment of Diamond McCarthy LLP as Special Litigation Counsel for the Official Committee of Unsecured Creditors* on May 11, 2015. No order on the application to employ Diamond McCarthy has been entered and the Committee will not continue to prosecute this application. Instead, following the Confirmation Date, Diamond McCarthy will be retained as special counsel for the Liquidating Trustee. The proposed compensation terms for Diamond McCarthy are described on *__Exhibit B__*.

### D.     Standing Stipulation

On March 26, 2015, Metawise and the Committee filed a *Stipulation for Order Conferring Standing on the Official Committee of Unsecured Creditors to Investigate, and if Necessary, Prosecute Certain Claims and Causes of Action on Behalf of the Bankruptcy Estate* (the "**Stipulation**") [Dkt. No. 72]. The Stipulation confers onto the Committee the right to investigate and, if necessary, prosecute on behalf of Metawise' estate certain claims and causes of action, including those arising out of Transfers to certain parties that the Committee believed to be insiders and/or affiliates of Metawise ("**Related Parties**"). The Related Parties are identified on Exhibit A to the Stipulation, which exhibit the Committee reserved the right to amend. Each of these Related Parties is listed among the parties listed on Exhibit C attached hereto and is identified as a "Related Party", which identification is made without prejudice to the right of the estate to identify further Related Parties. The Stipulation also provides that it may be replaced by a further assignment or authorization of the right to prosecute the claims as may be ordered by the Court or provided in a confirmed chapter 11 plan. The Court entered an order approving the Stipulation on April 17, 2015.

### E.     Draco Conversion

At the hearing held before the Court on July 16, 2015, the Court converted the Draco Case to a case under chapter 7. Shortly thereafter, Andrea A. Wirum was appointed as the

chapter 7 trustee in the Draco Case (the "**_Draco Trustee_**").

## F.    The Greenfield Settlement

On or about July 16, 2015, the Committee and Greenfield reached an agreement in principal regarding the terms of the Greenfield Settlement.  After the appointment of the Draco Trustee, the Draco Trustee raised potential constructive fraudulent transfer claims related to two transfers totaling approximately $51,000 made by Draco to Greenfield prior to the Petition Date (the "**_Draco Claims_**").  Thereafter, settlement discussions ensued between the parties, at the conclusion of which a settlement was reached that incorporates the resolution of the Draco Claims into the Greenfield Settlement.  On September 18, 2015, the Committee filed a motion to approve the Greenfield Settlement on a twenty-one day notice to creditors and other parties in interest.

The Greenfield Settlement resolves all the claims of Greenfield and of the estate against one another, including the estate's claims regarding the Transfers to Greenfield and the Greenfield Secured Claim (except to the extent Greenfield is entitled to assert a new claim as provided in the Greenfield Settlement).  Also, pursuant to the Greenfield Settlement, in exchange for a payment of $35,000 from Metawise, Metawise will acquire the Draco Claims, which immediately thereafter will be released.  In short, if approved, the Greenfield Settlement will result in the following:

- Greenfield will release to the Metawise's estate $900,000 from the "financial assurance" account.

- Greenfield will retain the balance of funds in the "financial assurance" account in the approximate amount of $1,137,400 in full satisfaction of Greenfield claims against the Metawise.

- Greenfield will retain title to the Equipment (described in the Greenfield Settlement).

- Metawise will pay to Draco $35,000 from the funds released to Metawise to purchase the Draco Claims, and will release and relinquish the Draco Claims against Greenfield.

- The Greenfield Settlement is conditioned upon this Court's approval under Bankruptcy Rule 9019 pursuant to a final, non-appealable order.

- Upon the effective date of the Settlement, the mutual releases in the Settlement by and between Metawise and the Committee, on the one hand, and Greenfield, on the other hand, will become effective..

Reference to the Greenfield Settlement should be made for the full terms of the settlement.  The approval of the Greenfield Settlement is critical and is a condition precedent for the Plan to become effective.

# VI.
## CLASSIFICATION AND TREATMENT OF CLAIMS

The claims against and interests in the Debtor are classified below (except for administrative and priority claims) for purposes of the Plan.[2]

The listing of the claims in the Plan does not necessarily imply that the claim is an allowed claim. A claim is allowed ("***Allowed***") if: (a) a proof of claim was (i) timely filed, or (ii) deemed filed under Bankruptcy Code Section 1111(a), or (iii) filed late with permission of the Court; and (b) such claim is not disputed, or, if disputed, such clam has been allowed in whole or in part by a final order of the Court, provided that any such claim shall be an allowed claim only to the extent stated in any such order.

The right to object to claims will be vested in the Liquidating Trust upon confirmation of the Plan. As of the date of this Plan, the review and analysis of the validity of the claims have not been completed. Such process will be continued following the confirmation of the Plan. Once this process is completed, it is anticipated that objections may be filed to certain claims. All claims (other than the Greenfield Secured Claim) will be subject to such review and analysis. Any and all rights of the estate giving rise to an objection to a claim are reserved under the Plan.

The following is a summary of each class under this Plan and whether such class is entitled to vote on the Plan:

| Class | Description | Subclasses | Entitled to Vote? |
|-------|-------------|------------|-------------------|
| 1 | Secured Creditors | 1A (Greenfield Secured Claim) <br> 1B (Baosteel Secured Claim) <br> 1C (Barron Secured Claim) | No <br> No <br> No |
| 2 | General Unsecured Creditors | N/A | Yes |
| 3 | Equity Interests | N/A | No |

## A.    Class 1:  Secured Claims

1.    <u>Classification</u>:  This class consists of holders of secured claims.  Class 1 is divided into 3 subclasses as follows:

(a)    <u>Subclass 1A</u>: Subclass 1A consists of the following claim:

---

[2] Except for a claim for the Secretary of State scheduled in an unknown amount and a Proof of Claim #9 filed by the IRS (discussed below), there are no priority claims listed on the Debtor's Schedules or reflected on the Claims Register.

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 12:12:03    Page 13 of 59

| Subclass | Claim | Proof of Claim # | Amount Asserted | Collateral |
|----------|-------|------------------|-----------------|------------|
| 1A | Greenfield Secured Claim. | 18[3] | $864,476.77 | $2,037,400 financial assurance account |

Treatment of Subclass 1A: Subclass 1A claim will receive the treatment set forth in the Greenfield Settlement, which treatment shall be in full satisfaction and release of the Subclass 1A. Subclass 1A shall not receive any distribution under the Plan.

Right to Vote: Subclass 1A claim is not entitled to vote on the Plan.

(b)      Subclass 1B: Subclass 1B consists of the following claim:

| Subclass | Claim | Proof of Claim # | Amount Asserted | Collateral |
|----------|-------|------------------|-----------------|------------|
| 1B | Baosteel Secured Claim | 11 | $5,779,063.00 | Debtor's personal property pursuant to Security Guaranty Agreement guaranteeing affiliate obligations |

Treatment of Subclass 1B: Allowed Subclass 1B claim, to the extent it has not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the holder of the Allowed Class 1B claim agrees to a different treatment, will receive the following treatment: Subclass 1B creditor's legal, equitable, and contractual rights remain unchanged with respect to the above collateral. The confirmation order will constitute an order for relief from stay. The creditor in Subclass 1B shall retain its interest in the collateral until paid in full. Any deficiency amount on account of the Subclass 1B claim shall be treated as a Class 2 claim. For clarity, the Subclass 1B creditor's security interest does not and shall not extend to Causes of Action and their proceeds.

Right to Vote: Subclass 1B is not impaired and is not entitled to vote on confirmation of the Plan.

(c)      Subclass 1C: Subclass 1C consists of the following claim:

---

[3] The Debtor's Schedules identifies Greenfield by a slightly different name "Greenfield Environmental Trust Group, Inc."

| Subclass | Claim | Proof of Claim # | Amount Asserted | Collateral |
|----------|-------|------------------|-----------------|------------|
| 1C | Barron Secured | 17 | $4,866.59 | Balance of retainer for legal services in the amount of $15,236.87 |

Treatment of Subclass 1C: The Barron Claim has been satisfied pursuant to the Barron Stipulation. Subclass 1C shall not receive any distribution under the Plan.

Impairment: Subclass 1C secured claim is not entitled to vote on confirmation of the Plan.

**B.    Class 2:  General Unsecured Claims**

1.    Classification:  This class consists of holders of unsecured claims as follows:

(a)    Presumed Allowed Claims:    The holders of the following unsecured claims have filed Proofs of Claim in the bankruptcy case and, therefore, are presumed valid (subject to review, analysis and any right to object thereto by the Liquidating Trustee):

| Creditor | Amount of Proof of Claim | Proof of Claim # |
|----------|--------------------------|------------------|
| Colinda International Inc. | $1,150,000.00 | 2 |
| Dade Moeller | $162,245.30 | 12 |
| First Space Holdings Ltd. | $2,900,000.00 | 4 |
| Hand Arendall LLC | $15,486.69 | 7 |
| Lucas Newman Science and Technologies, Inc. | $486,010.90 | 1 |
| McDowell Knight Roedder & Sledge LLC | $45,392.58 | 14 |
| Meijin Energy Group Co. | $7,925,169.98 | 15 |
| Progressive Environmental Services Inc. | $2,439,487.55 | 16 |
| Sino East Transportation Ltd. | $499,209.44 | 10 |
| Top Gains Mineral Macao Ltd. | $5,037,698.63 | 5 |
| Wisco American Company Ltd. | $300,000.00 | 3 |
| Zhenhua Logistics Co., Limited | $13,258,617.00 | 6 |
| Millard Refrigerated Services, Inc. | $10,007,147.46 | 13 |

| Creditor | Amount of Proof of Claim | Proof of Claim # |
|---|---|---|
| Draco Resources, Inc. | $624,423.25 | 19[4] |
| Huaze International Investment Ltd. | $4,980,000.00 | 20[5] |
| TOTAL: | $49,830,888.78 | |

(b) <u>Disallowed Claims</u>: Holders of the following unsecured claims were scheduled on the Debtor's Schedules as either disputed, contingent or unliquidated claims but have not filed Proofs of Claim in the bankruptcy case and the deadline to file claims has passed. Therefore, these claims are not Allowed and the holders of such claims will not receive any distribution (except if and to the extent such claims become Allowed).

| Creditor | Scheduled Amount | Scheduled as Disputed, Contingent, or Unliquidated |
|---|---|---|
| Ackerman Seterfitt | $4,029.90 | Yes |
| City of Foster City | Unknown | Yes |
| FMS Engineering, LLC | $17,677.50 | Yes |
| General Agents Acceptance Corp. | $3,843.43 | Yes |
| Kemron Environmental Services | $374.00 | Yes |
| Seastar International Group Inc. | Unknown | Yes |
| Sunrise Dragon International, Inc. | $659,603.40 | Yes |
| Kelson Management Inc. | $54,976.99 | Yes |
| Metamining, Inc. | $148,724.08 | Yes |
| Metawise Group Alabama, Inc. | $1,223,453.50 | Yes |
| TOTAL: | $2,112,682.80 | |

2. <u>Treatment</u>: To the extent Allowed Class 2 claims have not already been paid, released or otherwise satisfied prior to the Effective Date, and except to the extent the holder of

---

[4] Draco filed claim No. 19 after the claims bar date, which the Court deemed timely filed pursuant to its *Order Granting Motion to Deem Proof of Claim Timely Filed* (Dkt. No. 149).

[5] Claim No. 20 was filed after the claims bar date but was deemed timely filed pursuant to the Court's *Order Granting Motion to Allow the Filing of a Late Proof of Claim* (Dkt. No. 142).

an Allowed Class 2 claim agrees to a different treatment, on or as soon as practicable following the Effective Date, each such holder of an Allowed unsecured claim in Class 2 shall receive a pro rata share of any and all Unsecured Creditor Distributions until all holders of Allowed unsecured claims in Class 2 are paid in full plus interest paid at the time of making the final Unsecured Creditor Distribution to the extent excess funds then remain available after payment of all fees and expenses of the Liquidating Trust and Allowed claims (which interest shall be calculated based on the amount of the Allowed unsecured claim at the non-default rate provided in the applicable contract or, if there is no contract, at the federal judgment rate, accrued up to and including the date of such final distribution) (such excess funds are referred to herein as "*Excess Funds*").

       3.    <u>Impairment</u>:  Class 2 is impaired and is entitled to vote under the Plan.

## C.    Class 3:  Equity Holders

       1.    <u>Classification</u>:  Class 3 consists of holders of equity interests in Debtor (each, an "*Interest*").

       2.    <u>Treatment</u>:  Upon the Effective Date, Interests in the Debtor shall be deemed cancelled, provided, however, upon termination of the Liquidating Trust, holders of Interests shall be entitled to receive a pro rata share of any Liquidating Trust Assets remaining after payment of all Allowed Administrative Claims, priority claims (if any), secured claims, fees and expenses of the Liquidating Trust and general unsecured claims as set forth in the Plan.

       3.    <u>Impairment</u>:  Class 3 is impaired under the Plan.  Holders of Interests in Class 3 are deemed to reject the Plan under Section 1126(g) of the Bankruptcy Code and not entitled to vote on the Plan.

## VII.
## TREATMENT OF ADMINISTRATIVE AND PRIORITY CLAIMS

    Claims entitled to administrative priority under Bankruptcy Code Sections 507(a)(2), 507(a)(3), and 507(a)(8) are not classified.

## A.    Administrative Claims

    "*Administrative Claim*" consist of the claims of any cost or expense of administration of a kind specified in Section 503(b) of the Bankruptcy Code, including any actual and necessary costs and expenses of preserving the estate incurred on or after the Petition Date and through and including the Confirmation Date, fees due to the Unites States Trustee pursuant to 28 U.S.C. § 1930(a)(6), and compensation for legal or other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 330 and 331 of the Bankruptcy Code or otherwise, including compensation of the Professionals.

    The Committee is aware of the following Administrative Claims, which consist of current estimated amounts as of August 31, 2015:

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 17 of 59

| Claimant | Estimated Amount |
|---|---|
| Sheppard Mullin (Committee's counsel) | $227,000 |
| Stapleton Group (Committee's financial advisor) | $35,000 |
| McNutt Law Group LLP ( (Debtor's counsel) | $125,000[6] |
| United States Trustee | $325 |
| TOTAL: | $387,325 |

Except to the extent that the holder of a particular Administrative Claim has agreed to a different treatment of such claim, each holder of an Allowed Administrative Claim shall be paid in full on or as soon as practicable following the Effective Date.

Any request for allowance of an Administrative Claim pursuant to Section 503(a) of the Bankruptcy Code (including an estimation of expenses to be incurred after the Effective Date), other than the fees due to the United States Trustee's office, must be filed on or before the sixtieth (60th) day after the Effective Date or the holder of such claim shall be forever barred from asserting such claim or receiving any payment on account of such claim. For clarity, the Liquidating Trustee is not obligated to review or take a position regarding the applications of compensation by the Professionals seeking allowance of their claims for the pre-Effective Date period.

**B.    Priority Tax Claims**

The following table lists the priority tax claims against the Debtor:

---

[6] This amount is based on estimate by the Debtor of amounts incurred in the Metawise case. As disclosed in MLG's employment application Rule 2016(b) statement, MLG held a retainer balance of $60,000 as of the Petition date, for application against MLG's post-petition fees in both the Metawise case and the Draco case. Assuming an allocation of 50% of the retainer to each case, approximately $30,000 would be applied against the Metawise fees and expenses, leaving a balance of approximately $95,000. Actual allocation of the retainer balance between cases remains subject to final determination in connection with MLG's fee applications.

Case: 14-31652   Doc# 155   Filed: 09/22/15   Entered: 09/22/15 22:12:03   Page 18 of 59

| Taxing Authority | Proof of Claim # | Claim Amount |
|---|---|---|
| Internal Revenue Service | 9 | $0.00[7] |

To the extent that the holders of Allowed priority tax claim have not already been paid, satisfied or otherwise released prior to the Effective Date, and except to the extent that a holder of an Allowed priority tax claim agrees to a different treatment, the holder of such Allowed priority tax claim shall receive on the later of the Effective Date or the date such priority tax claim becomes an Allowed claim, or as soon thereafter as is reasonably practicable, in full and final satisfaction, settlement and release and in exchange for such claim, an amount in cash equal to the unpaid amount of such Allowed priority tax claim, which may be paid through deferred cash payments of a value, as of the Effective Date, equal to the Allowed amount of such claim, over a period ending not later than five years after the Petition Date, and in a manner not less favorable than the most favored general unsecured claim provided for by the Plan.

## VIII.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The following contracts and leases are listed on Schedule G of the Debtor's Schedules:

| Counterparty | Contract/Lease |
|---|---|
| Dade Moeller& Associates, Inc. | Service contract for environmental services |
| Draco Resources, Inc. | Agreement for operation of iron ore removal project |
| Greenfield[8] | Greenfield Contract |
| ICF Solutions, Inc. | Export agreement with port for iron ore fines |
| Meijin Energy Group Co, LTD Guanzhong Plaza | Purchase and sale agreement for iron ore |
| Peters Security International, Inc. | Non-residential office sublease |
| Seastar International Group, Inc. | Service contract (Truck Transportation) |
| Sunrise Dragon International Inc. | Service contract for Contract for operation of Mobile Alabama site for removal of iron ore fines |

---

[7] The IRS initially filed a priority claim of $168, and later filed an amendment to the claim which revised the amount to $0.00.

[8] Greenfield's claims arising out of the Greenfield Contract are satisfied pursuant to the Settlement.

To the extent any such contract or lease is an executory contract or unexpired lease (and other than with respect to the Greenfield Contract, which is addressed in the Greenfield Settlement), such contract or lease shall be deemed rejected under the Plan.

Any claims arising out of such rejection must be filed with the Bankruptcy Court by no later than thirty (30) calendar days after the Effective Date.  If no Proof of Claim is filed within such time period, it shall be conclusively presumed that no such claim exists and will be forever barred from receiving a distribution from any distribution from the Debtor, its estate or the Liquidating Trust.

Allowed claims arising from rejection of executory contracts or unexpired leases shall be treated as Class 2 claims (general unsecured claims).  It is unknown to what extent the amounts of claims arising from such rejection are factored in the Class 2 claims that have been filed in the case.  To the extent such amounts are not already factored in the filed Class 2 claims, additional claims can be expected to be filed for such amounts.

**IX.**
**IMPLEMENTATION OF THE PLAN**

**A.     Funding the Plan**

The Plan is a liquidating plan and shall be initially funded through the $865,000 amount that is anticipated to be received under the Greenfield Settlement, which will used to pay the Allowed Administrative Claims and fund the Liquidating Trust.  Thereafter, the Plan will be funded from the liquidation and monetization of the other assets of the estate, including from the Recoveries that may be recovered from the Causes of Action, as well as any other remaining assets that may be liquidated or otherwise monetized and/or claims that may be recovered for the benefit of the estate and/or the Liquidating Trust.  Because more than enough funds are expected to be available on the Effective Date, no other funding is needed or contemplated in order for the Plan to be feasible.

**B.     Liquidating Trust**

     1.     Establishment of Liquidating Trust

The Liquidating Trust shall be formed upon confirmation of this Plan.  As of the Effective Date, all assets of the Debtor's estate, including without limitation, (a) all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date and thereafter, (b) all property treated by the Plan, and (c) all books and records of the Debtor, including any attorney-client privilege, work product privilege, or other privilege or immunity in connection therewith (the "***Liquidating Trust Assets***") shall be transferred to the Liquidating Trust.  All of the Debtor's right, title and interest in and to the Liquidating Trust Assets shall be automatically vested in the Liquidating Trust on the Effective Date, free and clear of liens, claims, encumbrances and other interests.

After the Confirmation Date and prior to the Effective Date, an agreement establishing the Liquidating Trust pursuant to this Plan in substantially the form attached hereto as ***Exhibit A*** (the "***Liquidating Trust Agreement***") shall be executed.

2.    Liquidating Trustee

On the Effective Date, Randy Sugarman of Sugarman & Company LLP shall be appointed as the Liquidating Trustee. Attached as ***Exhibit D*** is a description of his experience, education and qualifications. Prior to deciding to proceed with Mr. Sugarman, the Committee considered other potential candidates, both local and outside the Northern District of California. Ultimately, the Committee and Debtor agreed on the selection of Mr. Sugarman based on his experience, education and qualifications, coupled with his willingness to proceed on a contingent fee basis.

## C.    Avoidance Actions and Other Causes of Action

Notwithstanding any other term or provision of the Plan, the Liquidating Trustee shall have, on and after the Effective Date, sole authority and responsibility for investigating, analyzing, commencing, prosecuting, litigating, compromising, settling, collecting or otherwise administering the Causes of Action. Any claims arising out of the recovery of an avoidable transfer under chapter 5 of the Bankruptcy Code after the claims bar date in the Bankruptcy Case must be filed on or before thirty (30) calendar days after entry of an order of judgment avoiding the transfer.

Pursuant to section 1123(b) of the Bankruptcy Code, on and after the Effective Date, the Liquidating Trustee may maintain and enforce any claims or rights held by the Debtor, the estate or the Liquidating Trust, and may continue to pursue any pending Causes of Action brought by the Debtor or the Committee. In accordance with Bankruptcy Code section 1123(b)(3) or any corresponding provision of similar non-bankruptcy law, on and after the Effective Date, (a) the Liquidating Trustee shall have standing and be deemed to be the representative of the Debtor and the estate in the Bankruptcy Case and any adversary proceeding in the Bankruptcy Case, under the Plan, and in any judicial proceeding or appeal as to which the Debtor is a party, and (b) the Liquidating Trustee shall retain all Causes of Action of the Debtor and the estate, including, without limitation, avoidance actions, objections to claim, and prosecution of the Causes of Action. The Liquidating Trustee may sue on, settle, or compromise (or decline to do any of the foregoing) any and all Causes of Action, provided, however, with respect to any settlement of a Cause of Action where the amount in controversy exceeds $100,000, the Liquidating Trustee shall either (i) obtain the written approval of the Plan Committee or (ii) Court approval.

The entities listed on ***Exhibit C*** to the Plan are entities believed to have received Transfers and, as a result, are subject to the Liquidating Trustee's investigation and potential filing of causes of action. The identification of a person or entity as on Exhibit C merely indicates that they may have received a Transfer, and is not indicative of any determination that a meritorious Cause of Action exists against that person or entity, and shall not obligate the Liquidating Trustee to take any particular action.

The investigation into all of the Causes of Action has not been completed. Accordingly, any and all Causes of Action that may exist against any person or entity may be pursued by the Liquidating Trustee, regardless of whether, or the manner in which, such Causes of Action are identified in the Plan. The failure to identify a Cause of Action in the Plan shall not constitute a waiver or release of any such Cause of Action. The Liquidating Trustee shall have the sole

discretion to determine whether and to what extent to investigate of any Transfer and/or assert any Cause of Action.

Any and all Causes of Action shall survive entry of the Confirmation Order for the benefit of the Debtor's estate and, on and after the Effective Date, for the benefit of the Liquidating Trust and its beneficiaries.

**D.    Objections to Claims**

On and after the Effective Date, the Liquidating Trustee may file objections to claims at any time, with such objections to proceed pursuant to the applicable local bankruptcy rules. No distribution shall be made under the Plan with respect to all or any portion of a disputed claim until that claim becomes an Allowed claim by agreement of the parties to any claim dispute or by final order of the Bankruptcy Court.

From and after the Effective Date, the Liquidating Trustee shall have the exclusive authority to file, settle, compromise, withdraw, or litigate to judgment any objections to claims, including without limitation, any objections to claims filed by the Debtor prior to the Effective Date. The Liquidating Trustee expressly reserves the right to resolve any disputed claim outside the Bankruptcy Court under applicable governing law, provided, with respect to any settlement of a disputed claim where the amount in controversy exceeds $500,000, the Liquidating Trustee shall either (i) obtain the written approval of the Plan Committee or (ii) the Court approval.

**E.    Dissolution of Creditors Committee**

On the Effective Date, the Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to, arising from and in connection with the Bankruptcy Case, and the retention or employment of its Professionals shall terminate. The Committee shall continue to exist after the Effective Date solely with respect to (i) all applications filed pursuant to Bankruptcy Code sections 330 and 331 seeking payment of fees and expenses incurred by any Professional and (ii) after the Confirmation Date, any modifications to, or motions or other actions seeking the enforcement or implementation of the provisions of the Plan or the Confirmation Order.

**F.    Role and Powers of the Plan Committee**

On the Effective Date, the Plan Committee shall be established for the purpose of, among other things, monitoring the implementation of the Plan, supervising the activity of the Liquidating Trustee and its professionals, and monitoring distributions on account of Allowed Claims under the Plan. The Plan Committee shall be comprised of the same members of the Committee who choose to serve on the Plan Committee and will remain in existence until distributions to holders of Allowed General Unsecured Claims are completed. The Powers of the Plan Committee shall be as set forth in the Liquidating Trust Agreement.

**G.    Dissolution of the Debtor**

As of the Effective Date, the Liquidating Trustee shall be authorized to dissolve the Debtor if necessary and when appropriate as it is reasonably determined by the Liquidating

Trustee.  Such dissolution shall not affect the treatment of Class 3, holders of Interests, as such holders will only receive residual Liquidating Trust Assets, if any.

**H.      Resignation of Officers and Directors**

Upon the Effective Date, the members of the Debtor's board of directors and the officers of Debtor shall be deemed to have resigned, without further action.  As of the Effective Date, as a result of such resignation, such officers and directors shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to operation or management of the Debtor, and shall not be considered to serve in any fiduciary capacity as to the Debtor.  For clarity, the provisions of this paragraph shall not be considered a release or exculpation as to any actions of such officers or directors prior to the Effective Date.

**X.**
**EFFECTIVENESS OF THE PLAN**

The following are conditions precedent to the Effective Date of the Plan:

1.      The Bankruptcy Court shall have entered the Confirmation Order which shall be in a form and substance satisfactory to the Committee;

2.      No stay of the Confirmation Order shall then be effective at the time the other conditions set forth in this section are satisfied or waived;

3.      The Bankruptcy Court shall have entered a final order approving the Greenfield Settlement, which order shall not have been stayed; and

4.      All documents, instruments and agreements, in form and substance satisfactory to the Committee, provided for under or necessary to implement the Plan, including the Liquidating Trust Agreement, shall have been executed and delivered.

The foregoing conditions may be waived, in whole or in part, by the Committee in writing at any time without notice, or by an order of the Bankruptcy Court.

**XI.**
**MISCELLANEOUS PROVISIONS**

**A.      Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over the Bankruptcy Case subsequent to the Confirmation Date to the fullest extent permitted by law.

**B.      Effectuating Documents and Further Transactions**

Upon entry of the Confirmation Order, the Liquidating Trustee, the Committee and the Debtor shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and to take such actions as may be reasonably necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:06    Page 23 of
59

C.      **Preservation of Causes of Action.**

For avoidance of any doubt, any and all claims and other Causes of Action accruing to the Debtor or the estate shall be preserved and retained by the Liquidating Trust and the Liquidating Trustee, who shall have the exclusive right and standing to enforce any such Causes of Action.

D.      **Post-Confirmation United States Trustee Fees.**

All outstanding fees payable pursuant to section 1930, Title 28, United States Code, shall be paid by the Debtor on or before the Effective Date.  Responsibility for, and the payment of, post-Effective Date, quarterly fees due to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6) through the date of entry of either an order dismissing the case or a final decree shall be paid by the Liquidating Trustee.  So long as the Debtor and Liquidating Trustee, as applicable, are required to make these payments, the Debtor and the Liquidating Trustee, as applicable, shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

E.      **Effect of Conversion to Chapter 7.**

If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate.

F.      **Notices.**

Except as otherwise provided in the Plan, any notice or other communication required or permitted under the Plan will be in writing and deemed to have been validly served, given, delivered, and received upon the earlier of:  (a) the first business day after transmission by facsimile or hand delivery or deposit with an overnight express service or overnight mail delivery service or by electronic means with consent of the recipient; or (b) the third calendar day after deposited in the United States mail, with proper first class postage prepaid.  Contact information relevant to providing notice to the Liquidating Trustee will be disclosed in the Liquidating Trust Agreement.

G.      **Post-Effective Date Notices.**

Except as otherwise provided in the Plan, upon and after the Effective Date, notices will be served only on the Office of the United States Trustee, the Liquidating Trustee, the Plan Committee, and those persons who file with the Bankruptcy Court and serve upon the Liquidating Trustee a request, which includes the person's name, contact individual, address, telephone number and facsimile number, that such person receive notice of post-Effective Date matters (the list of such parties is referred to herein as the "***Post-Effective Date List***").  Persons who had previously filed with the Bankruptcy Court requests for special notice of the proceedings and other filings in the Bankruptcy Cases will not receive notice of post-Effective Date matters unless such persons file a new request in accordance with this Section.

CMRH:3742.888        Combined Plan and Disclosure Statement
Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:06    Page 24 of 59

**H.     Plan Controls**

To the extent the terms of the Plan are inconsistent with the Liquidating Trust Agreement, the terms of the Plan shall be controlling.

**I.     Applicable Law**

The Plan is to be governed by and construed under the Bankruptcy Code and the laws of the State of California as they may be applicable.

*[Remainder of Page Left Blank]*

# XII.
# RECOMMENDATION AND CONCLUSION

The Committee believes that confirmation of the Plan is in the best interests of the estate and its creditors and in particular, believes that recoveries to holders of Allowed claims will be maximized under the circumstances by confirmation of the Plan. The Committee urges all creditors entitled to vote on the Plan to vote in favor of the Plan.

Respectfully submitted,

Dated:  September 22, 2015

OFFICIAL COMMITTEE OF UNSECURED CREDITORS

By: _____

Name: HARRY J. NEWMAN

Title: Committee Chairperson

Dated:  September 22, 2015

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____
*/s/ Ori Katz*
ORI KATZ
ROBERT K. SAHYAN

Counsel for Official Committee of
Unsecured Creditors

# Exhibit A

LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (the "***Agreement***"), dated as of _____ __, 2015, is by and among Metawise Group, Inc. (the "***Debtor***"), the Official Committee of Unsecured Creditors (the "***Committee***") of the Debtor, and Randy Sugarman, solely in his capacity as the Liquidating Trustee (the "***Liquidating Trustee***").

Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to them in the Plan (defined below).

W I T N E S S E T H

A.      WHEREAS, on November 11, 2014, the Debtor commenced a bankruptcy case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California San Francisco Division (the "***Bankruptcy Court***") commencing Bankruptcy Case No. 14-31652-DM (the "***Bankruptcy Case***").

B.      WHEREAS, on _____ __, 2015, the Committee filed the Combined Plan of Liquidation and Disclosure Statement Dated May __, 2015 (the "***Plan***") for the orderly liquidation of the Debtor.

C.      WHEREAS, by order dated _____ __, 2015, the Bankruptcy Court confirmed the Plan (the "***Confirmation Order***").

D.      WHEREAS, under the Plan, the assets of the Debtor's estate (the "***Estate***") are to be transferred to a liquidating trust (the "***Liquidating Trust***") for the benefit of the unsecured creditors as provided in the Plan.

E.      WHEREAS, pursuant to the Plan, the Liquidating Trust is intended to be treated as a grantor trust for federal income tax purposes within the meaning of Sections 671-677 of the Internal Revenue Code (as amended from time to time, the "***IRC***").

F.      WHEREAS, the Liquidating Trustee has agreed to serve as such upon the terms and subject to the conditions set forth in this Agreement to administer the Liquidating Trust for the benefit of the Beneficiaries, and to provide administrative services relating to the implementation of the Plan.

NOW, THEREFORE, in consideration of the promises and the mutual covenants and agreements contained herein and in the Plan, and the Liquidating Trustee hereby agrees as follows:

**DECLARATION OF TRUST**

Pursuant to the terms of the Plan and the Confirmation Order, all right, title and interest of the Debtor in and to the Liquidating Trust Assets shall be absolutely assigned to the Liquidating Trust, and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Liquidating Trust and its successors in trust and its successors and assigns forever;

SMRH:437414276.6

Case: 14-31652     Doc# 155     Filed: 09/22/15     Entered: 09/22/15 22:12:03     Page 28 of
59

IN TRUST NEVERTHELESS upon the terms and subject to the conditions set forth herein and for the benefit of the Beneficiaries, as and to the extent provided in the Plan, and for the performance of and compliance with the terms hereof and of the Plan;

PROVIDED, HOWEVER, that upon termination of the Liquidating Trust, this Agreement shall cease, terminate, and be of no further force and effect; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED that the Liquidating Trust Assets are to be held and applied by the Liquidating Trustee upon the further covenants and terms and subject to the conditions herein set forth.

## ARTICLE 1

## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1     Name of Trust.   The trust created by this Agreement shall be known as the "*Metawise Liquidating Trust*" or herein, and as referred to in the Plan, as the "*Liquidating Trust*."

1.2     Establishment of Liquidating Trust.   Pursuant to the Plan, the Liquidating Trust is hereby established on behalf of, and for the sole benefit of, the holders, from time to time, of Allowed Class 2 general unsecured claims as and to the extent provided in the Plan (such holders collectively, the "*Beneficiaries*") and, on the terms and subject to the conditions set forth herein and in the Plan provided, however, that the Liquidating Trust is obligated under the Plan to address the claims of holders of Allowed Administrative Claims, Allowed secured claims, and Allowed priority tax Claims to the extent set forth in the Plan.  The parties to this Agreement and the Beneficiaries intend for the Liquidating Trust to be treated as a grantor trust under IRC Section 671.  The Liquidating Trust is structured to comply with the requirements of Rev. Proc. 94-45, 1994-2 C.B. 684, and this Agreement shall be construed to comply with such requirements.

1.3     Purpose of the Liquidating Trust.   The Liquidating Trust shall be established for the purpose of receiving the Liquidating Trust Assets, and, as appropriate, administering, investigating, holding, prosecuting, settling, selling, disposing, and liquidating the same and distributing cash to Beneficiaries, in accordance with the Plan and pursuant to Treasury Regulations Section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business. The Liquidating Trust shall not be deemed a successor-in-interest of the Debtor for any purpose other than as specifically set forth herein or in the Plan and the Confirmation Order.

1.4     Transfer of Trust Assets.   As of the Effective Date of the Plan, and in accordance with the Confirmation Order, the Estate hereby transfers, assigns, and delivers to the Liquidating Trust, any and all of its right, title, and interest in all Liquidating Trust Assets.  The Liquidating Trustee agrees to accept and hold the Liquidating Trust Assets in trust for the benefit of the Beneficiaries, subject to the terms of this Agreement and the Plan, and to liquidate and distribute such Liquidating Trust Assets to the Beneficiaries as agreed upon in the Plan.  As of the Effective Date, the Debtor shall not have any interest in or with respect to the Liquidating Trust Assets.  The Debtor, for itself and its predecessors and successors, disclaims any right to any reversionary interest in any of the Liquidating Trust Assets, but nothing herein will limit the right and power of

SMRH:437414276.6

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 29 of 59

the Liquidating Trustee to abandon any Liquidating Trust Assets in the event that the Liquidating Trustee determines it is in the best interests of the Liquidating Trust and its Beneficiaries.

1.5     Title to Liquidating Trust Assets.

(a)     Upon the Effective Date and the full execution of the Agreement, all of the Liquidating Trust Assets shall be transferred, assigned and delivered to the Liquidating Trust for the benefit of the Beneficiaries, as provided for in this Agreement and the Plan.  In this regard, the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtor's estate to the Beneficiaries, and then by such Beneficiaries to the Liquidating Trust in exchange for their beneficial interests therein in accordance with the Plan.  Upon the transfer of the Liquidating Trust Assets, the Liquidating Trustee shall succeed to all of the Estate's right, title and interest in such assets, and the Estate shall have no further interest in or with respect to the Liquidating Trust Assets or this Liquidating Trust.  Each of the Liquidating Trust and the Liquidating Trustee shall be considered for all purposes in respect of the disposition of the Liquidating Trust Assets as separate and distinct from, and independent of, the Debtor and the Estate.

(b)     The Liquidating Trust shall be treated as a "liquidating trust" within the meaning of Treasury Regulations Section 301.7701-4(d).  For all federal and state income tax purposes, the transfer of the Liquidating Trust Assets to the Liquidating Trust shall be treated as a transfer to the Beneficiaries of the Liquidating Trust for all purposes of the IRC (e.g., sections 61(a)(12), 483, 1001, 1012 and 1274) followed by a deemed transfer by such Beneficiaries to the Liquidating Trust.  The Liquidating Trust shall be considered a "grantor" trust, and the Beneficiaries shall be treated as the grantors and deemed owners of the Liquidating Trust.  To the extent valuation of the Liquidating Trust Assets to the Liquidating Trust is required under applicable law, the Liquidating Trustee shall value the transferred property and notify in writing the Beneficiaries of such valuations.  The assets transferred to the Liquidating Trust shall be valued consistently by the Liquidating Trustee and the Beneficiaries, and these valuations will be used for all federal income tax purposes.

1.6     Administration of the Liquidating Trust and Appointment of the Liquidating Trustee.  The Liquidating Trust shall be administered by the Liquidating Trustee in accordance with the provisions of this Agreement and the Plan.

1.7     Funding of the Liquidating Trust.

(a)     On the Effective Date, as provided herein and under the Plan, the Liquidating Trust shall automatically be vested with all of the Estate's right, title, and interest in the Liquidating Trust Assets, free and clear of liens, claims, encumbrances and other interests.  Such Liquidating Trust Assets as defined by the Plan, including without limitation, all cash on hand as of the Effective Date and all tangible and intangible assets of every kind and nature, including Causes of Action, and all proceeds thereof, existing as of the Effective Date.

(b)     The cash distributions to be made pursuant to the Plan and the funding of the applicable reserves will be derived from (i) cash held by the Estate as of the Effective Date, and (ii) any cash to be received by the Liquidating Trust from the further liquidating of assets and the

SMRH:437414276.6
Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 30 of 59

prosecution and enforcement of Causes of Action, and other funds available after the Effective Date.

(c)     The Liquidating Trustee shall not be obligated to physically segregate and maintain separate accounts for reserves or for funding distributions.  Separate reserves and funds may be merely bookkeeping entries or accounting methodologies, which may be revised from time to time, to enable the Liquidating Trustee to determine the amount of cash available, reserves and amounts to be paid to parties in interest.

(d)     The Liquidating Trustee may from time to time utilize Liquidating Trust Assets reduced to cash in amounts and at times that the Liquidating Trustee, in its discretion, deems necessary or appropriate to fund any and all costs and expenses that the Liquidating Trustee and the Liquidating Trust incur subsequent to the Effective Date in accordance with this Agreement and the Plan.

(e)     The Liquidating Trustee shall reserve the cash necessary to administer the Plan and wind up the Debtor's affairs, including but not limited to, funds for the payment of Administrative Claims, the costs of holding and liquidating Estate property, objecting to claims, making the distributions required by the Plan, prosecuting Causes of Action in accordance with the Plan, paying taxes, filing tax returns, paying fees of professionals retained by the Liquidating Trustee, providing for the purchase of insurance in the Liquidating Trustee's discretion, and/or other forms of indemnification for the Liquidating Trustee, and other necessary and usual business expenses.

1.8     Creation of Reserves.  On and following the Effective Date, the Liquidating Trustee shall have the power to establish and maintain appropriate reserves to the extent of cash available and as the Liquidating Trustee, after consultation with the Plan Committee, reasonably deems necessary to administer the Liquidating Trust and to satisfy disputed claims in the event that a disputed claim becomes an Allowed claim.

1.9     Causes of Action.  All Claims, rights, defenses, offsets, recoupments, causes of action, actions in equity or otherwise, whether arising under the Bankruptcy Code or federal, state or common law, which constitute property of the Estate within the meaning of section 541 of the Bankruptcy Code (including, without limitation, the Causes of Action), as well as all claims, rights, defenses, offsets, recoupments and causes of action arising under chapter 5 of the Bankruptcy Code with respect to the Debtor or the Estate, are part of the assets transferred and assigned to the Liquidating Trust as of the Effective Date in accordance with section 1123(b) of the Bankruptcy Code.  Prosecution and settlement of such claims, rights, defenses, and causes of action shall be the responsibility of the Liquidating Trustee, and the Liquidating Trustee shall pursue those claims, rights, defenses and causes of action, as appropriate, in accordance with the Plan and the Liquidating Trustee's judgment of what is in the best interests, and for the benefit of, the Beneficiaries of the Liquidating Trust, in consultation with the Plan Committee as provided for in the Plan and this Agreement.  The Liquidating Trustee shall have the sole discretion to determine whether and to what extent to investigate of any Transfer and/or assert any Cause of Action.

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

# ARTICLE 2

# LIQUIDATING TRUST INTERESTS

2.1     Identification of holders of Liquidating Trust Interests.  The names of the record holders of beneficial interests in the Liquidating Trust ("***Liquidating Trust Interests***"), and the amount of Liquidating Trust Interests held by such record holders, shall be recorded and set forth in a register maintained by the Liquidating Trustee (or its designee) expressly for such purpose. The Liquidating Trustee hereby establishes the Confirmation Date as the record date for purposes of establishing the official registry of holders of the Liquidating Trust Interests.  The distribution of Liquidating Trust Interests to the Beneficiaries shall be accomplished as set forth in the Plan and in this Agreement.  No certificates, securities or receipts or documentation in any other form or manner whatsoever evidencing the Liquidating Trust Interests will be issued to any record or beneficial holder of such interests.

2.2     Transferability of Liquidating Trust Interests.  The Beneficiaries shall have beneficial interest in the Liquidating Trust assets as provided in the Plan.  Any Beneficiary's Liquidating Trust Interest shall be transferable, subject, as applicable, to Bankruptcy Rule 3001(e) and any other provision of law, but shall not be binding on the Liquidating Trustee unless and until the transfer has been accepted by the Liquidating Trustee.  The Liquidating Trustee shall be entitled to recognize and deal for all purposes only with those holders of Liquidating Trust Interests identified on the claims register and the schedules of assets and liabilities of the Debtor.

2.3     Interests Beneficial Only.  The ownership of a beneficial interest hereunder shall not entitle any Beneficiary to any title in or to the Liquidating Trust assets as such (which title shall be vested in the Liquidating Trustee) or to any right to call for a partition or division of the Liquidating Trust assets or to require an accounting.

# ARTICLE 3

# THE LIQUIDATING TRUSTEE

3.1     Appointment of Liquidating Trustee.  The Liquidating Trustee shall be Randy Sugarman.  The Liquidating Trustee is willing and hereby accepts the appointment to serve as Liquidating Trustee pursuant to this Agreement and the Plan.

3.2     Compensation and Expenses of the Liquidating Trustee.

(a)     As compensation for services in the administration of this Liquidating Trust, the Liquidating Trustee shall be entitled to receive the following:

(i)     a flat fee in the amount of $25,000; and

(ii)     a litigation recovery-based fee calculated as follows:  four percent (4%) of the gross amount of all Recoveries (defined in the Plan) obtained by the Liquidating Trust.

(b)    In addition, the Liquidating Trustee shall be indemnified by and receive reimbursement from the Liquidating Trust Assets in accordance with Section 3.9 of this Agreement.

(c)    The Liquidating Trustee is hereby authorized to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without limitation, coverage with respect to the liabilities, duties and obligations of the Liquidating Trustee and its agents, representatives, employees or independent contractors under the Plan and this Agreement.

(d)    For clarity, the compensation, expense reimbursement and indemnity obligations provided for in this Section 3.2 shall be limited to the Liquidating Trust Assets and no recovery on account thereof shall be available against the Beneficiaries.

3.3    Powers.  The Liquidating Trustee's powers are exercisable solely in a fiduciary capacity for all holders of Liquidating Trust Interests and consistent with, and in furtherance of, the purposes of this Liquidating Trust.  Unless otherwise specified herein, the approval of the Liquidating Trustee shall constitute the act of the Liquidating Trust.  Subject to the terms and conditions of this Agreement, the Liquidating Trustee may delegate responsibility for discrete duties, issues or decisions to such other persons in its sole discretion.

3.4    Power and Authority of Liquidating Trustee.  The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estate appointed pursuant to section 1123(b)(3)(B) of the Bankruptcy Code. The Liquidating Trustee shall administer the Liquidating Trust, and the Liquidating Trust Assets, and make distributions from the proceeds of the Liquidating Trust in accordance with the Plan and this Agreement. In addition, the Liquidating Trustee shall have the authority to take all actions necessary and appropriate to wind down the affairs of the Debtor consistent with the Plan and any applicable non-bankruptcy law. Without limitation, to the extent applicable, the Liquidating Trustee shall file final federal, state, foreign and local tax returns for the Debtor.  Subject to the terms of this Agreement and the Plan, the Liquidating Trustee shall be authorized, empowered and directed to take all actions necessary or desirable to comply with the Plan and fulfill the duties and obligations arising thereunder including, without limitation, to:

(a)    Object to the allowance of claims;

(b)    Open, maintain and administer bank accounts;

(c)    Engage employees and professional persons as necessary or desirable to assist in carrying out the provisions of and purposes underlying the Plan and this Agreement;

(d)    Incur and pay reasonable fees, costs, and expenses in connection with administering the Liquidating Trust and implementing the terms of the Plan and this Agreement, including the reasonable fees, costs and expenses of retained professionals, in accordance with the provisions of the Plan and this Agreement;

(e)    Expend the Liquidating Trust Assets as necessary to maintain the value of the assets of the Liquidating Trust during liquidation;

SMRH:437414276.6

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 33 of 59

(f)      Pay the reasonable and necessary expenses incurred by the Plan Committee, in accordance with the provisions of this Agreement;

(g)      Investigate, analyze, commence, prosecute, litigate, compromise and otherwise administer the Causes of Action, and take all other necessary and appropriate steps to collect, recover, settle, liquidate or otherwise reduce the Liquidating Trust Assets to cash;

(h)      Approve compromises of the Causes of Action and all claims, and execute all necessary and appropriate documents to effectuate such settlements;

(i)      Administer, sell, liquidate, or otherwise dispose of the Liquidating Trust Assets in accordance with the terms of the Plan and this Agreement;

(j)      Represent the Liquidating Trust before the Bankruptcy Court and other courts of competent jurisdiction, if necessary, with respect to matters regarding the administration of the Liquidating Trust;

(k)      Comply with any applicable orders of the Bankruptcy Court and any other court of competent jurisdiction, and all applicable laws and regulations, concerning the matters set forth herein;

(l)      Hold legal title to any and all rights of the Debtor, the Estate and the Beneficiaries under this Agreement in or arising from the Liquidating Trust Assets;

(m)      In reliance upon the Schedules and the claims register maintained in the Bankruptcy Case, maintain on the Liquidating Trustee's books and records a register evidencing the beneficial interest held by each Beneficiary as provided by Article 2 of this Agreement;

(n)      Make all distributions to the holders of Allowed claims provided for, or contemplated by, the Plan;

(o)      Establish and maintain any applicable reserves;

(p)      Make all tax withholdings, file tax information returns, make tax elections by and on behalf of the Liquidating Trust and file tax returns for the Liquidating Trust as a grantor trust in accordance with 26 C.F.R. § 1.671-4(a);

(q)      Pay any taxes imposed on the Liquidating Trust;

(r)      As soon as reasonably practicable after the Effective Date, make a good faith valuation of the Liquidating Trust Assets which shall be made available from time to time, to the extent relevant, and used consistently by all parties for all income tax purposes;

(s)      Carry insurance coverage if the Liquidating Trustee deems such insurance necessary and appropriate in his sole and absolute discretion;

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

(t)     Exercise such other powers as may be vested in the Liquidating Trustee pursuant to the Plan, this Agreement, the Confirmation Order, or other final orders of the Bankruptcy Court;

(u)     Execute any documents, instruments, contracts or agreements necessary or desirable to carry out the powers and duties of the Liquidating Trustee;

(v)     Provide to the Plan Committee such reports on the progress of the Plan as the Liquidating Trustee may deem reasonable; and

(w)     Stand in the shoes of the Debtor, the debtor in possession, and the Estate for all purposes consistent with the Plan and this Agreement.

3.5     <u>Limitations on the Liquidating Trust and on the Liquidating Trustee's Authority</u>.

(a)     Notwithstanding anything herein to the contrary, the Liquidating Trustee shall not be authorized to engage in any trade or business, except to the extent reasonably necessary for the orderly administration of the Liquidating Trust's assets and distributions to holders of Liquidating Trust Interests.  Notwithstanding any other authority granted in <u>Sections 3.3</u> and <u>3.4</u> herein, the Liquidating Trustee is not authorized to engage in any investments or activities inconsistent with the treatment of the Liquidating Trust as a liquidating trust within the meaning of Treasury Regulations Section 301.7701-4(d) or inconsistent with the requirements set forth in Rev. Proc. 94-45.

(b)     The Liquidating Trust shall not hold 50% or more of the stock (in either voting power or value) of any entity that is treated as a corporation for federal income tax purposes, nor be the sole member of a limited liability company, nor have any interest in an entity that is treated as a partnership for federal income tax purposes, unless such stock, membership interest, or partnership interest consists of the Liquidating Trust Assets, was obtained pursuant to rights under the Liquidating Trust Assets or was obtained involuntarily or as a matter of practical economic necessity in order to preserve the value of the Liquidating Trust Assets.

(c)     The Liquidating Trust shall not receive from the Debtor or the Estate any listed stocks or securities or other readily marketable assets.

(d)     The Liquidating Trust shall not receive or retain cash or cash equivalents in excess of a reasonable amount to meet claims and contingent liabilities (including disputed claims) or to maintain the value of the Liquidating Trust Assets during liquidating.

(e)     The Liquidating Trustee may (but shall not be required to, except as otherwise provided in the Plan) obtain an order of the Bankruptcy Court concerning any matter involving any sale, settlement, or other disposition of an asset or litigation of the Liquidating Trust, or any release, modification or waiver of existing rights as to an asset or litigation of the Liquidating Trust.

3.6     <u>Books and Records</u>.  The Liquidating Trustee shall maintain books and records relating to the Liquidating Trust Assets and income of the Liquidating Trust, if any, and the payment of expenses of, and liabilities of Claims against or assumed by, the Liquidating Trust in

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 35 of 59

such detail and for such period of time as may be necessary to enable it to make full and proper accounting in respect thereof. Such books and records shall be maintained in accordance with such accounting principles as may be applicable to an entity such as the Liquidating Trust so as to facilitate compliance with the tax reporting requirements of the Liquidating Trust. Except as otherwise may be expressly provided in this Agreement, nothing in this Agreement requires the Liquidating Trustee to file any accounting or seek approval of any court with respect to the administration of the Liquidating Trust, or as a condition for managing any payment or distribution of funds to the holders of Liquidating Trust Interests.

      3.7    <u>Distributions</u>.

      (a)    <u>Distributions</u>. As soon as reasonable and practicable after the Effective Date, the Liquidating Trustee shall make distributions to holders of Allowed claims in accordance with this Agreement and pursuant to the terms of the Plan. The Liquidating Trustee shall make distributions at least annually; provided, however, that the Liquidating Trustee may retain such amounts reasonably necessary to maintain the value of the Liquidating Trust Assets or meet claims and contingent liabilities including to fund any required reserves; and provided, further, however, that the Liquidating Trustee shall not be obligated to make a distribution if it is reasonably expected that the cost of such distribution would exceed the amount of cash on hand. The Liquidating Trustee shall make continuing efforts to administer the Liquidating Trust Assets, make timely distributions, and shall not unduly prolong the duration of the Liquidating Trust.

Following the payment of the Allowed Administrative Claims as set forth in Plan, distributions shall be made in the following order:

      <u>*First*</u>, to the holders of Allowed priority tax claims, if any;

      <u>*Second*</u>, to the accrued fees and costs of administering the Liquidating Trust made in a *pro rata* distribution, which fees and costs include:

      - The fees and costs of the Liquidating Trust as set forth in <u>Sections 3.2</u>, <u>3.11</u> and <u>3.12</u>; and

      - The fees and costs of the Plan Committee as set forth in <u>Sections 5.4</u>, <u>5.5</u> and <u>5.6</u>.

      <u>*Third*</u>, to fund the Unsecured Creditor Distributions to the unsecured creditors holding Allowed claims; and

      <u>*Fourth*</u>, to the extent Excess Funds remain after payment of all Allowed claims as set forth in the Plan, to the holders of Interests.

      (b)    <u>Pro Rata Share of Distributions to Beneficiaries</u>. Each Beneficiary shall receive its pro rata share of any and all Unsecured Creditor Distributions in accordance with the Plan, except that the Liquidating Trustee may withhold from amounts distributable to any Beneficiary, any and all amounts, determined in the Liquidating Trustee's reasonable sole discretion, to be required by any law, regulation, rule, ruling, directive or other governmental requirement.

SMRH:437414276.6
Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652   Doc# 155   Filed: 09/22/15   Entered: 09/22/15 22:12:03   Page 36 of 59

(c) <u>Unclaimed Distributions</u>. Any distributions of cash under the Liquidating Trust to holders of Liquidating Trust Interests that are unclaimed or undeliverable for a period of ninety (90) calendar days after the relevant distribution date, including any distribution by check that remains uncashed for ninety (90) calendar days after its issuance, shall constitute an unclaimed distribution. Any such uncashed check shall be void, and the holder shall no longer be entitled to that distribution or any later distributions. All right, title and interest in and to unclaimed distributions shall immediately vest in the Liquidating Trust, and such property shall be retained by the Liquidating Trust for distribution pursuant to the terms of the Plan and this Agreement, subject, however, to the Liquidating Trustee's discretion to distribute such unclaimed distributions to holders entitled thereto if such holders are subsequently located.

(d) <u>Disputed Claims</u>. No distribution shall be made with respect to all or any portion of a disputed claim until that claim becomes an Allowed claim by agreement of the parties to any claim dispute or by final order of the Bankruptcy Court. After the Allowed claim is established by agreement or final order, the Liquidating Trustee shall pay to the holder of such Allowed claim in the manner and amount provided in the Plan, including any catch-up on prior distributions. Pending resolution, the holder of a disputed claim will not receive interest on its claim.

(e) <u>Identity of Holder</u>. If any dispute arises as to the identity of a holder of a Liquidating Trust Interest who is to receive any distribution, the Liquidating Trustee may, in lieu of making such distribution to such Holder, make such distribution into a segregated fund until the disposition thereof shall be determined by Bankruptcy Court order or by written agreement among the interested parties to such dispute.

(f) <u>Withholding</u>. Any foreign, federal, state or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from any distributions hereunder. All distributions pursuant the Plan and this Agreement shall be net of the actual and reasonable costs of making such distributions and of any allocable fees or other charges relating thereto. All such amounts withheld, and paid to the appropriate taxing authority, shall be treated as amounts distributed to Beneficiaries for all purposes of this Agreement.

(g) [Intentionally Deleted].

3.8 <u>Compliance with Laws</u>. Any and all distributions, and proceeds of borrowings, if any, shall be in compliance with applicable laws. The rights of the Beneficiaries under this Agreement are not, and are not intended to be, securities subject to any federal, state or local securities law.

3.9 <u>Liability of Liquidating Trustee; Indemnification</u>. The Liquidating Trustee and his agents shall not be liable for actions taken or omitted in his or their capacity as, or on behalf of, the Liquidating Trustee, and shall be defended, held harmless or indemnified to the full extent under existing applicable law as determined by the Court, provided that no such indemnification shall apply to any breach of fiduciary duty. Subject to the foregoing, each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of his or their actions or inactions in his or their capacity as, or on behalf of, the Liquidating Trust to the full extent allowed under existing applicable law as determined by the Court. Any indemnification

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 37 of
59

claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Liquidating Trustee on behalf of the Liquidating Trust. The Liquidating Trustee shall be entitled to rely, in good faith, on the advice of his retained professionals. No implied covenants or obligations shall be read into this Agreement or the Plan against the Liquidating Trustee.

3.10    Investment and Safekeeping of Trust Assets.    All cash held by the Liquidating Trustee shall be invested as deemed appropriate by the Liquidating Trustee, and need not be invested in accordance with section 345 of the Bankruptcy Code, provided however that the right and power of the Liquidating Trustee to invest Liquidating Trust Assets, the proceeds thereof, and any income earned by the Liquidating Trust, subject to the terms of Section 3.5 hereof, shall be limited to the right and power that a liquidating trust, within the meaning of Treasury Regulations Section 301.7701-4(d), is permitted to hold, pursuant to the Treasury Regulations, Rev. Proc. 94-45, or any modification in the IRS guidelines, whether set forth in IRS rulings, other IRS pronouncements or otherwise.    For the avoidance of doubt, the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, is limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investment, such as Treasury bills.

3.11    Expense Reimbursement and Compensation.    The costs and expenses of the Liquidating Trust, including the fees and expenses (including, without limitation, reasonable out-of-pocket expenses) and any loss, liability, expense or damage that the Liquidating Trustee or any successor Liquidating Trustee may sustain in good faith and without willful misconduct, gross negligence, bad faith, self-dealing, breach of fiduciary duty, or *ultra vires* acts in the exercise and performance of any of the powers and duties of the Liquidating Trustee under this Agreement, any taxes imposed on or incurred by the Liquidating Trust or the Liquidating Trust Assets, the fees and expenses of any professionals retained by the Liquidating Trustee under this Agreement and the Plan and the compensation to be paid to the Liquidating Trustee, shall be paid out of the Liquidating Trust Assets.  Fees and expenses incurred from and after the Effective Date of the Plan in connection with the investigation, prosecution, compromise, settlement, liquidating, distribution or other disposition of the Liquidating Trust Assets shall, without limitation, be considered costs and expenses of the Liquidating Trust.  Allowed Administrative Claims of the Bankruptcy Case which are not paid by the Estate prior to the Effective Date shall be considered costs and expenses of the Liquidating Trust and shall be paid from funds transferred to the Liquidating Trust upon the Effective Date.  The Liquidating Trustee shall be entitled to receive compensation as described in Section 3.2 of this Agreement. Liquidating Trustee's retained professionals shall be entitled to receive reasonable compensation consistent with the terms of the Plan.  No other trustee, except any successor Liquidating Trustee, shall be entitled to receive compensation (other than reasonable out-of-pocket expenses that may be reimbursed in accordance with this Section 3.11) for services as trustee, paid out of the Liquidating Trust.

3.12    Retention and Payment of Professionals.    The Liquidating Trustee shall be authorized to retain Diamond McCarthy LLP ("***Diamond McCarthy***") as special litigation counsel in connection with the prosecution of the Causes of Action with compensation on terms substantially the same as those described on Exhibit B to the Plan.  In addition, the Liquidating Trustee shall be authorized to retain jointly with the Plan Committee Sheppard Mullin Richter &

SMRH:437414276.6
Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 38 of 59

Hampton LLP ("**SMRH**") to represent the joint interest of the Liquidating Trustee and the Plan Committee in connection with claim objection and bankruptcy matters other than the prosecution of Causes of Action. If an actual conflict between the Liquidating Trustee and the Plan Committee, SMRH shall not represent either party in connection with such conflict. The compensation of SMRH in connection with such retention shall be on terms substantially similar to those applicable for its representation of the Committee in the Bankruptcy Case.[1] To the extent that the Liquidating Trustee determines that he requires any assistance from former counsel for the Debtor, McNutt Law Group ("**MLG**"), on or after the Effective Date, the Liquidating Trustee is authorized in his sole discretion, to compensate such counsel for its time and expenses in its capacity and consistent with its duty and obligations as counsel to the Debtor, provided that this does not and shall not create an attorney-client relationship between the Liquidating Trustee and Debtor's counsel. To the extent the Liquidating Trustee desires to retain any professionals other than the foregoing professionals for any reason (other than solely with respect to a matter where, due to a conflict, SMRH cannot represent both the Liquidating Trustee and the Plan Committee), the Liquidating Trustee may retain such other professionals subject to the Plan Committee's prior written approval of such retention or otherwise the approval of the Bankruptcy Court.

In order for any professional retained by the Liquidating Trustee to receive compensation, such professional shall file with Bankruptcy Court a notice listing the amounts of fees and expenses sought and the period covered (the "**Fee Notice**") and serve the Fee Notice on the Office of the United States Trustee, the Plan Committee and the other parties on the Post-Effective Date List; provided that SMRH may file and serve a single Fee Notice with respect to its fees and expenses incurred in its joint representation of the Liquidating Trustee and the Plan Committee. If there is no objection to the requested fees and expenses within ten (10) calendar days of the Fee Notice, the requested amount shall be paid in full when funds are available. If any party objects to any portion of the fees or expenses submitted by any such professional, the objecting party shall prepare a written objection specifying the reason the objection is made and the amount to which the objection relates, and serve such written objection on the subject professional, the Liquidating Trustee and its counsel so that it is received within ten (10) calendar days of the service of the Fee Notice. The Liquidating Trustee shall pay the undisputed portion of such fees and expenses from available funds and shall reserve the amount of the disputed fees and expenses pending resolution of said objection by (i) agreement between the party requesting such fees and expenses and the objecting party, or (ii) resolution of the disputed amount by the Bankruptcy Court. Professionals retained by the Liquidating Trustee shall not otherwise be required to file formal applications for Court approval of post-confirmation fees and expenses.

3.13    <u>No Bond</u>. The Liquidating Trustee may serve without bond.

3.14    <u>Confidentiality</u>. The Liquidating Trustee shall, during the period that he serves in such capacity under this Agreement and following either the termination of this Agreement or the Liquidating Trustee's removal, incapacity, or resignation hereunder, hold strictly confidential and

---

[1] For its representation of the Committee, SMRH agreed to an alternative fee structure pursuant to which SMRH agreed to a blended hourly rate of $495 per hour for all attorneys working on the matter (regardless of their standard rate), with a guaranty of not less than 40% of all hours charged would be worked by partner level attorneys.

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 39 of 59

not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which he has become aware in his capacity as Liquidating Trustee.

## ARTICLE 4

## SUCCESSOR LIQUIDATING TRUSTEE

4.1     Removal of Liquidating Trustee.  Any person serving as Liquidating Trustee may be removed and replaced (i) by an order of the Bankruptcy Court on a showing of good cause or (ii) upon the request of the Plan Committee with or without cause.  The removal shall become effective on the date specified in the order.

4.2     Resignation of Liquidating Trustee.  The Liquidating Trustee may resign by giving not less than thirty (30) calendar days' prior written notice to the Plan Committee, provided that no such resignation shall be effective until the earlier of (i) the expiration of the thirty (30) calendar day notice period of the resignation, or (ii) the date the Liquidating Trustee receives the Plan Committee's written acknowledgement of the resignation. If a successor Liquidating Trustee is not appointed or does not accept his or her appointment within thirty (30) calendar days following delivery of a notice of resignation of the Liquidating Trustee, any party in interest may petition the Bankruptcy Court or any court of competent jurisdiction for the appointment of a successor Liquidating Trustee.

4.3     Appointment of Successor Liquidating Trustee upon Removal, Resignation, Death or Incapacity.  If the Liquidating Trustee is removed pursuant to Section 4.1 hereof, resigns pursuant to Section 4.2 hereof or otherwise is incapable of serving as Liquidating Trustee, a successor Liquidating Trustee shall be appointed by the Plan Committee subject to the approval of the Bankruptcy Court.  No successor Liquidating Trustee shall in any event have any liability or responsibility for the acts or omissions of any of his or her predecessors. Any successor Liquidating Trustee may accept and rely upon any accounting made by or on behalf of any predecessor Liquidating Trustee hereunder, and any statement or representation made as to the assets comprising the Liquidating Trust Assets or as to any other fact bearing upon the prior administration of the Liquidating Trust, so long as it has a good faith basis to do so.

4.4     Acceptance of Appointment by Successor Liquidating Trustee.  Every successor Liquidating Trustee shall execute, acknowledge and file with the Bankruptcy Court or other court of competent jurisdiction an instrument in writing accepting such appointment hereunder, and thereupon such successor Liquidating Trustee, without any further act, shall become fully vested with all of the rights, powers, duties and obligations of his or her predecessor with like effect as if originally named herein; provided, however, that a removed, incapacitated, or resigning Liquidating Trustee shall, nevertheless, when requested in writing by the successor Liquidating Trustee, execute and deliver an instrument or instruments conveying and transferring to such successor Liquidating Trustee under the Liquidating Trust all the rights, powers, duties and obligations of the Liquidating Trustee.

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

## ARTICLE 5

## PLAN COMMITTEE

5.1     Establishment of Plan Committee.  On the Effective Date, the Plan Committee shall be established and staffed by one or more, but not more than three (3) at any one time, holders of Allowed class 2 general unsecured claims.  The Plan Committee may adopt such bylaws as it may deem appropriate; provided, however, that no provision of any adopted bylaws may supersede any express provision of the Plan or this Agreement.  The Plan Committee will initially consist of the current members of the Committee who elect to become members of the Plan Committee.

5.2     Role of the Plan Committee.  The Plan Committee shall be appointed to consult with and advise the Liquidating Trustee from time to time regarding the administration of the Liquidating Trust in accordance with the provisions of the Plan and this Agreement.  The Plan Committee shall have an advisory role and, without prior Bankruptcy Court Approval, may not override an action taken or proposed to be taken by the Liquidating Trustee.  The members of the Plan Committee shall act in the best interests of the Beneficiaries of the Liquidating Trust.

5.3     Termination. The Plan Committee will remain in existence until the earlier of the termination of the Liquidating Trust or completion of Unsecured Creditor Distributions to Holders of Allowed class 2 general unsecured claims.

5.4     Limitation on Liability and Exculpation.   Neither the members of the Plan Committee nor the representatives or agents of such members shall be liable for actions taken or omitted in their capacity as, or on behalf of, the Plan Committee, and shall be defended, held harmless or indemnified to the full extent under existing applicable law as determined by the Court, provided no such indemnification shall not be applicable to any breach of fiduciary duty.  Subject to the foregoing, each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Plan Committee to the full extent allowed under existing applicable law as determined by the Court. Any indemnification claim under this section shall be satisfied from the Liquidating Trust Assets and any insurance coverages procured by the Liquidating Trustee on behalf of the Liquidating Trust. The Plan Committee shall be entitled to rely, in good faith, on the advice of its retained professionals.

5.5     Fees and Expenses of Members.  Members of the Plan Committee shall be entitled to reimbursement of reasonable and necessary expenses incurred in carrying out their duties as members of the Plan Committee, all of which shall be paid from the Liquidating Trust to the extent funds are available in the Liquidating Trust, without the need to file an application with the Bankruptcy Court.  Members of the Plan Committee shall not be entitled to compensation for time spent on the Plan Committee.

5.6     Retention and Payment of Professionals.  Subject to the remainder of this Section, on or after the Effective Date, the Plan Committee may retain such professionals (including, without limitation, attorneys and accountants) as may be deemed necessary or desirable by the Plan Committee to assist and advise the Plan Committee for purposes of carrying out the Plan Committee's functions as specified under the Plan. The Plan Committee shall be authorized to

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 41 of
59

retain SMRH jointly with the Liquidating Trustee as set forth in <u>Section 3.12</u> hereof. Except solely with respect to a matter where, due to a conflict, SMRH cannot represent both the Liquidating Trustee and the Plan Committee, other professionals may be retained by the Plan Committee subject to the Liquidating Trustee's prior written approval of such retention or otherwise approval of the Bankruptcy Court. The requirement described in <u>Section 3.12</u> for filing and serving a Fee Notice applicable to the Liquidating Trustee's professional applies to professionals retained by the Plan Committee seeking payment of post-confirmation fees and expenses; provided that SMRH may file and serve a single Fee Notice of its fees and costs incurred for its joint representation of the Plan Committee and the Liquidating Trustee.

## ARTICLE 6

## REPORTS TO HOLDERS OF LIQUIDATING TRUST INTERESTS

6.1 <u>Securities Laws</u>. Under section 1145 of the Bankruptcy Code, the issuance of Liquidating Trust Interests under the Plan shall be exempt from registration under the Securities Act of 1933 and applicable state and local laws requiring registration of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the registration and reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic reports with the Securities and Exchange Commission.

## ARTICLE 7

## TERMINATION OF LIQUIDATING TRUST

7.1 <u>Termination of Liquidating Trust</u>. The Liquidating Trustee shall be discharged of its duties, and the Liquidating Trust and shall be dissolved and terminated on the date on which both if (a) the Bankruptcy Court has entered a final order closing the Bankruptcy Case pursuant to section 350 of the Bankruptcy Code and (b) the Liquidating Trustee has administered all of the Liquidating Trust Assets and performed all other duties required by the Plan and this Agreement.

7.2 <u>Initial Term</u>. If, after five (5) years from the Effective Date of the Plan, the dissolution and termination of the Liquidating Trust has not occurred pursuant to <u>Section 7.1</u>, and the Liquidating Trustee determines that the facts and circumstances necessitate an extension of the duration of the Liquidating Trust in order to effectuate its purpose, the Liquidating Trust may be extended for a finite term. The Liquidating Trustee may, upon the expiration of the extended term, seek additional extensions of six (6) months each if warranted by the facts and circumstances. Any extension of the duration of the Liquidating Trust, as provided for herein, shall be subject to consent of the Plan Committee or the approval by the Bankruptcy Court or other court of competent jurisdiction.

7.3 <u>Limitation on Duration</u>. The Liquidating Trustee shall not unduly prolong the duration of the Liquidating Trust and shall endeavor in good faith to resolve, settle or otherwise dispose of the Liquidating Trust Assets and to effect the distribution of the Liquidating Trust Assets to the holders of Liquidating Trust Interests in accordance with the terms hereof and terminate the

SMRH:437414276.6

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 42 of 59

Liquidating Trust as soon as reasonably practicable. Prior to and upon dissolution and termination of the Liquidating Trust, the Liquidating Trust Assets shall be distributed to the holders of Liquidating Trust Interests.

## ARTICLE 8

## AMENDMENT AND WAIVER

8.1     Amendment and Waiver.   Any substantive provision of this Agreement may be amended or waived by the Liquidating Trustee with the approval of (i) the Bankruptcy Court or (ii) the Plan Committee, provided that with respect to this clause (ii), such modification or waiver is effective following ten (10) days after the date of filing such amendment or waiver with the Bankruptcy Court without an objection thereto having been filed by any interested party during such ten (10) day period. Technical amendments to this Agreement may be made, as necessary to clarify this Agreement or enable the Liquidating Trustee to effectuate the terms of this Agreement, by the Liquidating Trustee, upon prior written notice sent to the Plan Committee or filed with the Bankruptcy Court. Notwithstanding this Section 8.1, any amendments to this Agreement shall not be inconsistent with the purpose and intention of the Liquidating Trust to liquidate in a reasonable and orderly manner the Liquidating Trust Assets in accordance with Treasury Regulations Section 301.7701-4(d) and the Plan.

## ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.1     Intention of Parties to Establish Liquidating Trust.   This Agreement is intended to create a liquidating trust that shall be treated as a grantor trust with respect to the interests held by the Beneficiaries for federal and state income tax purposes and, to the extent provided by law, shall be governed and construed in all respects as such a trust, and any ambiguity herein shall be construed consistent herewith and, if necessary, this Agreement may be amended to comply with such federal and/or state income tax laws, which amendments may be made to apply retroactively.

9.2     Preservation of Privilege and Defenses.   In connection with the assets, rights, Claims, and Causes of Action that constitute the Liquidating Trust Assets, any attorney-client privilege, work-product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) relating to the same shall vest exclusively in the Liquidating Trustee and its representatives, and the Liquidating Trustee is authorized to take all necessary actions to effectuate the transfer of such privileges and available defenses.

9.3     Cooperation.   The Debtor shall provide the Liquidating Trustee with copies of any books and records pertaining to the Liquidating Trust Assets as the Liquidating Trustee shall reasonably require for the purpose of performing its duties and exercising its powers hereunder.

9.4     Laws as to Construction.   This Agreement shall be governed by and construed in accordance with the laws of the State of California, without giving effect to rules governing the conflict of laws.

SMRH:437414276.6

Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652     Doc# 155     Filed: 09/22/15     Entered: 09/22/15 22:12:03     Page 43 of 59

9.5     Jurisdiction.  The Bankruptcy Court shall have exclusive jurisdiction to implement and enforce the terms and provisions of this Agreement.

9.6     Severability.  If any provision of this Agreement or the application thereof to any person or entity or circumstance shall be finally determined by the Bankruptcy Court or other court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Agreement, or the application of such provision to persons or entities or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

9.7     Notices.  Any notice or other communication hereunder or pursuant to the Plan shall be in writing  and shall be deemed to have been sufficiently given, for all purposes if addressed as follows (provided, however, that only one notice or other communication hereunder need be sent to holders sharing the same address):

> If to the holders of Liquidating Trust Interests, to:
>
> The names and respective addresses set forth on the register or records maintained by the Liquidating Trustee.
>
> If to the Liquidating Trustee or the Liquidating Trust, to:
>
> Metawise Liquidating Trust
> Attn: Randy Sugarman
> 500 Sansome Street, Suite 600
> San Francisco, CA  94111
> Phone:  415-395-7501
> Fax:  415-658-2858
> Email: rsugarman@sugarman-company.com
>
> If to the Plan Committee, to:
>
> Plan Committee
> c/o _____
> _____
> _____
> _____
>
> with a copy to:
>
> Sheppard Mullin Richter & Hampton LLP
> Attn : Ori Katz, Esq.
> Four Embarcadero Center, 17th Floor
> San Francisco, CA 94131
> Phone : (415) 434-9100
> Fax : (415) 434-3947
> Email : okatz@sheppardmullin.com

SMRH:437414276.6

Case: 14-31652     Doc# 155     Filed: 09/22/15     Entered: 09/22/15 22:12:03     Page 44 of
59

9.8     Savings Clause.  If any clause or provision of this Agreement shall for any reason be held invalid or unenforceable by the Bankruptcy Court or other court of competent jurisdiction, such invalidity or unenforceability shall not affect any other clause or provision hereof, but this Agreement shall be construed, insofar as reasonable to effectuate the purpose hereof, as if such invalid or unenforceable provision had never been contained herein.

9.9     Successors.  This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and assigns.

9.10    Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original instrument, but all together shall constitute one agreement.

9.11    Waiver.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

9.12    Entire Agreement.  This Agreement, the Plan, and the Confirmation Order constitute the entire agreement by and among the parties and there are no representations, warranties, covenants or obligations with respect to the subject matter hereof except as set forth herein or therein.  This Agreement together with the Plan and the Confirmation Order supersede all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties hereto, relating to such subject matter.  Except as otherwise authorized by the Bankruptcy Court or specifically provided in this Agreement or in the Plan, nothing in this Agreement is intended or shall be construed to confer upon or to give any Person or Entity other than the parties hereto, and the Beneficiaries any rights or remedies under or by reason of this Agreement.

9.13    Relationship to the Plan.  The principal purpose of this Agreement is to aid in the implementation of the Plan, and therefore the Plan and the Confirmation Order are hereby incorporated into this Agreement.  To that end, the Liquidating Trustee shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Agreement.  If any provisions of this Agreement are found to be inconsistent with the provisions of the Plan, the provisions of the Plan shall control. The Plan and Confirmation Order are each hereby incorporated into this Agreement and made part hereof by this reference.

9.14    Effective Date.  This Agreement shall become effective as of the Effective Date of the Plan.

SMRH:437414276.6

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 45 of 59

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Agreement, or caused it to be executed and acknowledged on their behalf by their duly authorized officers, all as of the Effective Date.

Dated: _____          LIQUIDATING TRUSTEE


                              By: _____
                                  _____
                                  Liquidating Trustee


Dated: _____          OFFICIAL COMMITTEE OF UNSECURED
                              CREDITORS


                              By: _____
                                  _____
                                  Chairperson


Dated: _____          METAWISE GROUP, INC.


                              By: _____
                                  _____

SMRH:437414276.6
Liquidating Trust Agreement
for the Metawise Liquidating Trust

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 46 of 59

# Exhibit B

# EXHIBIT B

## SPECIAL LITIGATION COUNSEL COMPENSATION TERMS

The following describes the proposed compensation terms for special litigation counsel Diamond McCarthy LLP ("***Diamond McCarthy***"), who is expected to be retained following the confirmation of the Plan in connection with the prosecution and resolution of the Causes of Action:

### Compensation

Upon Diamond McCarthy's engagement by the Liquidating Trust, Diamond McCarthy will receive a flat fee of $25,000. Thereafter, except for reimbursement of out of pocket expenses as described below, Diamond McCarthy will be further compensated for its services only when the Liquidating Trust obtains a Recovery[1], either through settlement, judgment, or otherwise. Specifically, for representing the Liquidating Trustee in prosecuting any Cause of Action, Diamond McCarthy shall earn a contingency fee based on a percentage of the Liquidating Trust's Recoveries, which percentage is variable depending on the stage in the litigation when the Recovery is obtained.

The contingency fee is payable by the Liquidating Trust as set forth below:

a. ***If a Recovery is reached on a Cause of Action within one hundred twenty (120) days after the effective date of Diamond McCarthy's engagement,*** the contingent fee will be an amount equal to the lower of: (a) three times the legal fees incurred at the firm's standard hourly rates for the work performed in relation to the Cause of Action for which the Recovery is received or (b) forty percent (40%) of the gross Recovery, subject (c) to a minimum of one times the legal fees incurred at the firm's standard hourly rate for the work performed in relation to the Cause of Action, plus the amount necessary to reimburse the firm for the out of pocket expenses incurred in prosecuting the Cause of Action.

b. ***If a Recovery is received on the first Cause of Action filed within one (1) year of the effective date of Diamond McCarthy's engagement,*** if there is a gross Recovery received of $2 million or more, the contingent fee is an amount that is thirty-three percent (33%) of the gross Recovery, plus the amount necessary to reimburse the firm for the out of pocket expenses incurred in prosecuting the first Cause of Action.

c. ***If a Recovery is received on subsequent Cause(s) of Action within six (6) months of the filing of each subsequent Cause(s) of Action***, the contingent fee will be an amount to

---

[1] "***Recoveries***" or "***Recovery***" means any and all monetary payments or other valuable property received by the Liquidating Trust arising, pertaining to or resulting from the pursuit of the Causes of Action. For the purposes of calculating the appropriate contingency fee, a Recovery is "received" when the Liquidating Trust, the Liquidating Trustee or any agent of the Liquidating Trust takes possession or control of any Recovery on behalf of the Liquidating Trust. Recoveries or Recovery shall NOT include the value received by the Liquidating Trust from the disallowance of any claims resulting from resolution of Causes of Action.

reimburse all out of pocket expenses incurred in prosecuting such claim and the lower of (a) twenty-five percent (25%) of the gross Recovery or (b) three times the legal fees incurred at the firm's standard hourly rates for the work on the Cause(s) of Action that led to such Recovery, subject (c) to a minimum of one times the legal fees incurred at the firm's standard hourly rates for the work on the Cause(s) of Action that led to such Recovery.

d. ***33⅓% contingency on Recoveries before Commencement of Trial***:[2] Provided that (1) Diamond McCarthy receives timely payment of all out of pocket expenses as such expenses are incurred and as they are approved for payment in connection with the Causes of Action and (2) the Liquidating Trust receives a Recovery pursuant to a settlement, judgment or otherwise at any time after the periods set forth above in paragraph (a), (b), and (c) above (the "***Early Recovery Period***") and before Commencement of Trial, Diamond McCarthy shall be entitled to thirty-three and one-third percent (33⅓) of all net Recoveries (gross Recoveries minus reimbursed out of pocket costs) so received.

e. ***36% contingency on recoveries after Commencement of Trial***: Provided that (1) Diamond McCarthy receives timely payment of all out of pocket expenses as such expenses are incurred and as they are approved for payment and (2) the Liquidating Trust receives a Recovery pursuant to a settlement, judgment or otherwise at any time after the Early Recovery Period and after the Commencement of Trial, Diamond McCarthy shall be entitled to thirty-six percent (36%) of all net Recoveries (gross Recoveries minus reimbursed out of pocket costs) so received.

---

[2] "***Commencement of Trial***" means the first scheduled day of any bench trial, jury trial, or arbitration set by the court or arbitrator(s) in any lawsuit, legal action, contested proceeding, or arbitration filed by Diamond McCarthy on the Liquidating Trustee's or Liquidating Trust's behalf, even if that first schedule trial or arbitration date is continued or rescheduled to a later date.

Case: 14-31652    Doc# 155    Filed: 09/22/15    Entered: 09/22/15 22:12:03    Page 49 of 59

# Exhibit C

## Exhibit C

**List of Entities Who May Have Received a Transfer**

1-800-CONFERENCE®
8001 Irvine Center Drive LLC
A Better Source
A.J. Edmond Company
ACS Labs
AFCO
Affinity Insurance and Financial Services
Akerman Senterfitt
Akerman, Senterfitt and Eidson, P.A.
Alabama Mineral Properties, LLC
Alabama Power
American Express
Ananda Travel Service, Inc.
Andrew S. Mccreath & Son, Inc.
Angela Song
Arrowhead Mountain Spring Water Co.
Arthur D. Darden Incorporated
AT&T
AT&T Mobility
BA&IS
Bank of China
Bank Service Charges
Baosteel America Inc.
Barnette Energy LLC*
Barron & Redding, P.A. Corporation
Bay Area Holiday (USA), Inc.
Ben Li
Bin Li
Bloomberg Businessweek
BRE Properties Inc.
Bulldog Construction LLC
California Pacific Bank
Capes Shipping Agencies
Carteret Ship Agency
CCIC North America, Inc.
Century Cafe Corp.
Chang Li Yan*
Charles H. Merchant
Chase Card Services
Cheering Telecom, Inc.
China Armco Metals, Inc.
China Policy Group
Cigna HealthCare
City of Foster City
CJB Inc.
Clifton Construction, Inc.
CNA Insurance
Color Max Co.
Comcast
Compak Management Consultant

Consolidated Design & Machine, Inc.
Corporacion Integral de Comercio Exterior
Cosco Agencies (Los Angeles), Inc.
Cox Business Inc.
Dade Moeller
Dale L. Crews
David C. Hill
David Wang
DHL Express
Domain Bank
Dong Ji*
Dong Ji {2}
Draco Resources, Inc.*
Durham and Bates Agencies Inc
Eagle Construction& Environmental Svs
East West Bank
EDD
Emard Danoff Port Tamulski & Paetzold LLP
Eric Li
Fajie Wang
Farmers Insurance Exchange
Farmers Insurance Group
Farmers New World Life Insurance Company
Farrell-Cooper Mining Co.
FMS Engineering, LLC
Forbes Magazines
Franchise Tax Board
Franciscan Apartment
Funds Transfer
Gang Chen*
G.G. I.
General Agents Acceptance Corp
General Steamship Corp. Ltd.
Geotechnical Engineering Testing, Inc.
Global Shipping Services, S.A. de C.V.
Gore Electronics & Grafix
Greater Nevada Ranches LLC
Greating Shipping Company
Hand  Arendall LLC
Harrison Sale McCloy Corporation
Helen Lei
Hong Lin Zhang*
Hongye Chen
HSBC
Hua Zhang
Huaze International Investment (HK) Ltd.
HUGO ENRIGUE RIVERA
ICF Solutions Inc.
Inspectorate America Corporation
Integradora Nacional De Servicios
Intermedium Bank
Internal Revenue Service
Ista, North America
Jian Fang
Jones Stevedoring Company

Kaiser Foundation Health Plan, Inc.
Kaiser Permanente
Kelson Management Inc.*
Kemron Environmental Services
Kexuan Yao
Kim Hastie, License Commissioner
Kinder Morgan Energy Partners, L.P.
Kingston C.P.A. Limited
Law Offices of Craig V. Winslow
LC Reimbursement
Lee Law Offices
Levand Steel & Supply Corporation
Li, Inc.
Ling Li
Little Valley Group LLC
Lucas Newman Science and Technologies, In
MaloneBailey LLP
Maria Ines Salazar Alor
Marine Inspection, LLC
Marsh USA, Inc.
McDowell Knight Roedder & Sledge, LLC
McElroy, Hodges & Caldwell
MCERA
Metamining Inc.*
Metamining Nevada, Inc*
Metawise Group Alabama, Inc.*
Metawise Group, Inc.*
Metawise Resources Limited*
Mike Tsang
Million Wealth Shipping Limited
Mineracao Buritirama S.A.
Mobile Area Water and Sewer System
Mok Accountancy Corporation
N.W. White & Co.
Nalley and Dew, Law Corporation
Nasbulk Limited
National Benefit Services
Nature Bright
North American Marine Consultants
North Carolina State Ports Authority
Old Southern Bank Inc.
Ouro Mining, Inc.
PG & E
Ping Shu
Platts
Port of Vancouver USA
Poseidon Shipping Lines
Progressive Environmental Services, Inc.
Proshipping Group Corp. New York
Prosi S.A. De C.V.
Qi Wang
Qian Liang
QuickBooks Payroll Service
Quill Corporation
Robert Huang

Robert P. Geleta
Ross Island Sand & Gravel Co.
Rowe Surveying and Engineering Company
San Mateo County Clerk
San Mateo County Tax Collector
San Mateo Medical Center
Sandie Arnott, Tax Collector
Sandpiper Townhomes
Savannah Environmental Response Trust
Seastar International Group Inc.
Seastar International, LLC
Secretary of State
Servicios Especiales Portuarios SA de CV
SGS- CSTC (Tianjin) Co, LTD
SGS North America Inc.
Shadow Cove Apartments
Shiqing Yue
Sichenzia Ross Friedman Ference LLP
Silver Land Group Ltd.
Sino East Transportation Co. LTD.
Sino Vantage, Inc.*
Song Qiang Chen*
Songqiang Chen
South Carolina State Ports Authority
Southern California Edison
Specialty Minerals, LLC
Spiro Mining, LLC.*
SSA Cooper, LLC
State Corporation Commission
Stevens Towing of NC, LLC
Sui Jie Yao
Suijie Yao
Sunrise Dragon International, Inc.
Techno Copier System
TestAmerica Laboratories Inc.
The Bing Law Firm
The Hardberger Law Firm
The Insurance Shop
The Irvine Company Office Properties
The Wall Street Journal
Tian Jian Star Ship Agency Co., Ltd.
Tidewater Barge Lines, Inc.
Trading D & L
Transcenden Global
Trasesa S.A.
Tube City IMS
Union Pacific Rail Road Company
United States Treasury
UPS
US Bank
Valley Graphics Printing Inc.
Verizon Wireless
Vicomptel USA Inc.
Victor Sign & Adv. Co., Inc.
VTT Technical Research Centre of Finland

W. C. Leeuwenburg, Inc.
Wall Street Journal
Wang Qun
Wei Guo
Welldex Internacional, S.C.
West Coast Marine Cleaning
Weston Solutions, Inc.
Wholesale World
Wilkins Trucking Co., Inc.
Wisco America Company Limited
Worldpay Processing Inc.
Xia Peng Zheng
Xiaoyin Gao
Yang Zixin
Yestel Inc.
Yong An Insurance Co., Ltd.
Yong Chang
Yuming Wang, Esquire
Zhan Wang
Zhan Wang 1
Zhenhua Logistics (Hong Kong) Co.,Limited
Zuo Wang

* Related Entities

# Exhibit D



# SUGARMAN & COMPANY LLP
ACCOUNTANTS AND CONSULTANTS

**RANDY SUGARMAN, CPA, CFE, CFF & CIRA**

---

## PROFESSIONAL EXPERIENCE

- A Certified Public Accountant licensed in the State of California who has been practicing more than forty five years.
- A Certified Fraud Examiner who has worked on some of the largest frauds in Northern California including Technical Equities which involved more than $500 million and the Berg Ponzi scheme involving $1.3 billion.
- A Certified Insolvency and Restructuring Advisor who is the chief restructuring officer and chief operating officer of Sierra Snowboard responsible for selling the inventory and intellectual property of the company for $3.5 million to $7.5 million who had to litigate the collection of the sales proceeds and was able to negotiate through mediation a final settlement.
- The Crisis Manager, the Chief Executive Officer and the Board of Directors of a $300 million New York Stock Exchange Company whose subsidiaries I restructured and sold. One of the subsidiaries was the largest HMO in Washington D.C. In addition, I dealt with a federal grand jury investigation of the predecessor management.
- A federal bankruptcy trustee appointed at the request of four banks for an individual who owed the banks in excess of $20 million and who had fled the United States to avoid prosecution for fraud, among other things.
- A financial advisor to the creditors committee in the Any Mountain bankruptcy who negotiated the sale of the company's various retail stores.
- The working chairman of the board and interim chief executive officer of a $50 million defense contractor appointed by several financial institutions to turn the business around.
- A director of a public company and the designated expert for the audit committee of the same company.
- A federal bankruptcy trustee, appointed by the Office of the United States Trustee in a case involving the disappearance of $125 million of cattle and land.
- A federal bankruptcy examiner appointed various times by the federal bankruptcy court to analyze and report on the operating and financial conditions of a series of real estate projects; a restaurant and other businesses.

- A state court receiver appointed on different occasions to:
  - Supervise litigation involving a restaurant.
  - Manage a water proofing distributor.
  - Manage a health supplement company.
  - Operate a restaurant to maintain a special use permit.
- An assignee for benefit of creditors appointed on occasions to:
  - Liquidate a furniture distributor.
  - Liquidate several law firms.
  - Liquidate a well known San Francisco restaurant.
- A trustee of a trust for a money center bank to liquidate assets and manage litigation against the State of Maryland and the State of New Jersey recovering over $8 million, among other things.
- A third director appointed by the court of a subsidiary of a famous guitar company.
- Appointed as an expert for various California courts including Contra Costa for various business disputes.
- Appointed as a referee by the superior court to resolve an accounting dispute.
- Appointed by a federal judge as a special master to resolve a ten year old accounting and related issues dispute.
- Expert for the City of San Francisco involving a $3 billion claim against Bank of America which was mediated and resolved based upon my analysis of the actual damages.
- Financial advisor for a developer who had over $350 million of commercial real estate in Denver and Sacramento ultimately restructured in bankruptcy based upon my analysis.
- Expert for several different banks opposing the restructure of the debt of a real estate developer of over $150 million of real estate.


**EDUCATION**

M.B.A.
Stanford University, Graduate School of Business
Accounting emphasis

Graduate Studies
Golden Gate University
Taxation

Bachelor of Arts
Stanford University
International Relations

**PROFESSIONAL AFFILIATIONS**

The following certifications: MBA, CPA, Certified Fraud Examiner (CFE), Certified Insolvency and Restructuring Advisor (CIRA), Certified in Financial Forensics (CFF) by the American Institute of Certified Public Accountants.

Member of the American Institute of Certified Public Accountants, California Society of Certified Public Accountants, The Association of Insolvency & Restructuring Advisors, Turnaround Management Association, and American Bankruptcy Institute.  I previously served on the Board of Directors of the Bay Area Bankruptcy Forum and the Tax Committee of the California Society of Certified Public Accountants.